630 So.2d 700 (1994)
In re Freddie H. PITRE, Sr., Sheriff and Ex-Officio Tax Collector, Parish of Iberville, State of Louisiana.
No. 93-CA-2322.
Supreme Court of Louisiana.
January 14, 1994.
Concurring Opinion January 19, 1994.
Rehearing Denied February 10, 1994.
G. William Jarman, Linda S. Akchin, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, for applicant.
James G. Gulotta, Noel J. Darce, Stone, Pigman, Walther, Wittmann, & Hutchinson, New Orleans, Thomas C. Delahaye, Canova & Delahaye, Dana K. Larpenteur, Plaquemine, for respondent.
Carey J. Messina, Baton Rouge, for Louisiana Chemical Ass'n amicus curiae.
Concurring Opinion by Justice Dennis January 19, 1994.
WATSON, Justice.[1]
This is a direct appeal from the trial court's decision that LSA-R.S. 33:130.18 unconstitutionally *701 grants a tax exemption in derogation of those enumerated in Article 7, Section 21, of the Louisiana Constitution.
On August 18, 1969, the Iberville Parish Policy Jury created an industrial district for Ciba-Geigy Corporation. The industrial district was in a special service district, the Iberville Parish Waterworks District No. 2, established January 14, 1960. LSA-R.S. 33:130.18, enacted in 1964, provides:
§ 130.18. Increase of certain taxation in industrial areas prohibited; exceptions
When an industrial area shall be created including territory which is a part of a preexisting special service district which furnishes any of the services enumerated in R.S. 33:130.15, such territory shall continue to be subject to taxes of the special service district which had previously been levied. No new tax levied by any such special service district shall apply to any territory within an industrial area unless such tax is a renewal or extension of a previously existing tax, the proceeds of which are to be used to continue an existing service. No increase of an existing tax levied by any such special service district shall apply to any territory within an industrial area unless, because of increased maintenance or other costs, such increase is necessary to continue to provide an existing service.
In 1980, the Waterworks District voters approved a $1.5 million bond issue for the water system. In 1984, the Iberville Parish Police Jury issued one million dollars of general obligation bonds. The additional millage servicing the bonds was paid under protest by Ciba-Geigy, which claimed an exemption under LSA-R.S. 33:130.18.
The Iberville Parish Sheriff holds $289,021.01, the taxes paid under protest for the years 1985 through 1991. (An exception of prescription was filed as to the 1988 taxes, totaling $29,539.29, and those taxes are not involved in this appeal.)
The Waterworks contends that the tax increase was necessary to upgrade substandard service, evidenced by discolored water and low water pressure. A tax increase necessary to maintain existing service is not exempted by the statute. Since it has not increased its geographical limits or its customer base, Waterworks claims that it has continued to provide an existing service. Ciba-Geigy counters that the increased millage is a new tax from which it has a statutory exemption.
The parties made cross motions for summary judgment. The trial court declared LSA-R.S. 33:130.18 unconstitutional as a violation of Article 7, Section 21, which lists the only property exempt from ad valorem taxation. In reasons for judgment, the trial court indicated that the increased millage was probably necessary to provide an existing service but did not decide the untried issue.
Statutes are presumed to be constitutional. State in Interest of J.A.V., 558 So.2d 214, 216 (La.1990); City of New Orleans v. Scramuzza, 507 So.2d 215, 217 (La. 1987). Courts do not consider superfluous constitutional challenges. Alexander v. Louisiana, 405 U.S. 625, 638, 92 S.Ct. 1221, 1227, 31 L.Ed.2d 536, 544 (1972). When a case can be decided on other grounds, this Court will not reach a constitutional issue. Diaz v. Allstate Ins. Co., 433 So.2d 699, 702 (La. 1983); Benson & Gold Chev. v. La. Motor Veh. Com'n, 403 So.2d 13, 23 (La.1981); State in Interest of Toler, 262 La. 557, 568, 263 So.2d 888, 892 (1972); Tafaro's Invest. Co. v. Division of Housing Improve., 261 La. 183, 188, 259 So.2d 57, 59 (1972); Aucoin v. Dunn, 255 La. 823, 826, 233 So.2d 530, 531 (1970).
This case presents an exception to the general rule. Article 14, Section 18(B), of the Louisiana Constitution of 1974 provides: "Laws which are in conflict with this constitution shall cease upon its effective date."
Article 7, Section 21, of the Louisiana Constitution of 1974 provides that: "the following property and no other shall be exempt from ad valorem taxation:" (See Appendix 1 for ad valorem tax exemptions.) The list does not allow the legislature to create additional exemptions. *702 There is an exception in Subsections (F) and (H) for the State Board of Commerce and Industry, which is not applicable here.
LSA-R.S. 33:130.18 was enacted under the 1921 Constitution. Article 10, Section 24, of that Constitution (See Appendix 2) allowed the legislature to grant some industrial tax relief. There is no parallel to Section 24 in the Louisiana Constitution of 1974. Therefore, any validity the statute may have had prior to the effective date of the Louisiana Constitution of 1974 ceased when that Constitution came into force.
Both Constitutions allow tax exemptions only for the listed exceptions and "no other."
Warren Co., Mississippi v. Hester, 219 La. 763, 770, 54 So.2d 12, 13, U.S. cert. denied, 342 U.S. 877, 72 S.Ct. 167, 96 L.Ed. 659 (1951), held that the legislature was constrained by the 1921 Constitution from creating additional tax exemptions or enlarging the scope of those enumerated in the Constitution. The Hester rationale also applies to the 1974 Constitution.
This statute provided an exemption from ad valorem taxation in derogation of Article 7, Section 21, of the 1974 Constitution. Therefore, the exemption for new or increased taxes in LSA-R.S. 33:130.18 ceased on the effective date of the present Constitution.
For the foregoing reasons, the judgment of the trial court herein is affirmed.
AFFIRMED.
LEMMON, J., concurs.
ORTIQUE, J., concurs. The result is correct.
CALOGERO, C.J., concurs and assigns reasons.
DENNIS, J., concurs with reasons.

APPENDIX 1

Enumeration of Exemptions From Ad Valorem Taxes
(A) Public lands; other public property used for public purposes.
(B) (1)(a) Property owned by a nonprofit corporation or association organized and operated exclusively for religious, dedicated places of burial, charitable, health, welfare, fraternal, or educational purposes, no part of the net earnings of which inure to the benefit of any private shareholder or member thereof and which is declared to be exempt from federal or state income tax; and
(b) property leased to such a nonprofit corporation or association for use solely as housing for homeless persons, as defined by regulation adopted by the tax commission or its successor provided that the term of such lease shall be for at least five years, that as a condition of entering into the lease the property be in compliance with all applicable health and sanitation codes for use as housing for homeless persons, that the lease shall provide that compensation to be paid the lessor shall not exceed one dollar per year, and that such contract of lease shall recite that the property shall be used exclusively for the purpose of housing the homeless, and further provided that at such time as the property is no longer used solely as housing for homeless persons, the property shall no longer be exempt from taxation;
(2) property of a bona fide labor organization representing its members or affiliates in collective bargaining efforts; and
(3) property of an organization such as a lodge or club organized for charitable and fraternal purposes and practicing the same, and property of a nonprofit corporation devoted to promoting trade, travel, and commerce, and also property of a trade, business, industry or professional society or association, if that property is owned by a nonprofit corporation or association organized under the laws of this state for such purposes.
None of the property listed in Paragraph (B) shall be exempt if owned, operated, leased, or used for commercial purposes unrelated to the exempt purposes of the corporation or association.
(C) (1) Cash on hand or deposit;
(2) stocks and bonds, except bank stocks, the tax on which shall be paid by the banking institution;
*703 (3) obligations secured by mortgage on property located in Louisiana and the notes or other evidence thereof;
(4) loans by life insurance companies to policyholders, if secured solely by their policies;
(5) the legal reserve of domestic life insurance companies;
(6) loans by a homestead or building and loan association to its members, if secured solely by stock of the association;
(7) debts due for merchandise or other articles of commerce or for services rendered;
(8) obligations of the state or its political subdivisions;
(9) personal property used in the home or on loan in a public place;
(10) irrevocably dedicated places of burial held by individuals for purposes of burial of themselves or members of their families;
(11) agricultural products while owned by the producer, agricultural machinery and other implements used exclusively for agricultural purposes, animals on the farm, and property belonging to an agricultural fair association;
(12) property used for cultural, Mardi Gras carnival, or civic activities and not operated for profit to the owners;
(13) rights-of-way granted to the State Department of Highways;
(14) boats using gasoline as motor fuel;
(15) commercial vessels used for gathering seafood for human consumption; and
(16) ships and oceangoing tugs, towboats, and barges engaged in international trade and domiciled in Louisiana ports. However, this exemption shall not apply to harbor, wharf, shed, and other port dues or to any vessel operated in the coastal trade of the states of the United States.
(17) Materials, boiler fuels, and energy sources used by public utilities to fuel the generation of electricity.
(D) (1) Raw materials, goods, commodities, and articles imported into this state from outside the states of the United States:
(a) so long as the imports remain on the public property of the port authority or docks of the common carrier where they first entered this state;
(b) so long as the imports (other than minerals and ores of the same kind as any mined or produced in this state and manufactured articles) are held in this state in the original form in bales, sacks, barrels, boxes, cartons, containers, or other original packages, and raw materials held in bulk as all or a part of the new material inventory of manufacturers or processors, solely for manufacturing or processing; or
(c) so long as the imports are held by an importer in any public or private storage in the original form in bales, sacks, barrels, boxes, cartons, containers, or other original packages and agricultural products in bulk. This exemption shall not apply to these imports when held by a retail merchant as part of his stock-in-trade for sale at retail.
(2) Raw materials, goods, commodities, and other articles being held on the public property of a port authority, on docks of any common carrier, or in a warehouse, grain elevator, dock, wharf, or public storage facility in this state for export to a point outside the states of the United States.
(3) Goods, commodities, and personal property in public or private storage while in transit through this state which are moving in interstate commerce through or over the territory of the state or which are in public or private storage within Louisiana, having been shipped from outside Louisiana for storage in transit to a final destination outside Louisiana, whether such destination was specified when transportation began or afterward.
Property described in Paragraph (D), whether or not entitled to exemption, shall be reported to the proper taxing authority on the forms required by law.
(E) Motor vehicles used on the public highways of this state, from state, parish, and special ad valorem taxes. This exemption shall not extend to any general or special tax *704 levied by a municipal governing authority, or by a district created by it, unless the governing authority thereof provides for the exemption by ordinance or resolution.
(F) Notwithstanding any contrary provision of this Section, the State Board of Commerce and Industry or its successor, with the approval of the governor, may enter into contracts for the exemption from ad valorem taxes of a new manufacturing establishment or an addition to an existing manufacturing establishment, on such terms and conditions as the board, with the approval of the governor, deems in the best interest of the state.
The exemption shall be for an initial term of no more than five calendar years, and may be renewed for an additional five years. All property exempted shall be listed on the assessment rolls and submitted to the Louisiana Tax Commission or its successor, but no taxes shall be collected thereon during the period of exemption.
The terms "manufacturing establishment" and "addition" as used herein mean a new plant or establishment or an addition or additions to any existing plant or establishment which engages in the business of working raw materials into wares suitable for use or which gives new shapes, qualities or combinations to matter which already has gone through some artificial process.
(G) Coal or lignite stockpiled in Louisiana for use in Louisiana for industrial or manufacturing purposes or for boiler fuel, gasification, feedstock, or process purposes.
(H) Notwithstanding any contrary provision of this constitution, the State Board of Commerce and Industry or its successor, with the approval of the governor and the local governing authority and in accordance with procedures and conditions provided by law, may enter into contracts granting to a property owner, who proposes the expansion, restoration, improvement, or development of an existing structure or structures in a downtown, historic, or economic development district established by a local governing authority or in accordance with law, the right for an initial term of five years after completion of the work to pay ad valorem taxes based upon the assessed valuation of the property for the year prior to the commencement of the expansion, restoration, improvement, or development. Contracts may be renewed, subject to the same conditions, for an additional five years extending such right for a total of ten years from completion of the work.
(I) (1) Notwithstanding any contrary provision of this Section, the authority or district charged with economic development of each parish is hereby authorized to enter into contracts for the exemption from parish, municipal, and special ad valorem taxes of goods held in inventory by distribution centers. In the absence of the existence of an economic development authority or district, the parish governing authority is authorized to grant contracts of exemption as are provided for in this Paragraph.
(2) The contract for exemption shall be on such terms and to the extent, up to and including the full assessed valuation of the goods held in inventory, as the economic development authority or district deems in the best interest of the parish. However, prior to entering into each individual contract, the economic development authority or district must request and receive written approval of the contract, including its terms and an estimated fiscal impact, from each affected tax recipient body in the parish, as evidenced by a favorable vote of a majority of the members of the governing authority of the tax recipient body. Failure to receive all required approvals from the tax recipient bodies before entering into a contract shall render the contract null and void and of no effect.
(3) The term "distribution center" as used herein means an establishment engaged in the sale of products for resale or further processing for resale. The term "goods held in inventory" as used herein means goods or products which have been given new shapes, qualities, or combinations through some artificial process and does not include raw materials such as natural gas, crude oil, sulphur, or timber or goods or products held for sale to consumers.

*705 APPENDIX 2

Article 10, Section 24, of the 1921 Constitution
§ 24. Authority for tax relief for manufacturing establishments.
Section 24. (a) It is recognized as essential to the continued growth and development of the state of Louisiana and to the continued prosperity and welfare of its people that a program of tax relief for certain manufacturing industries be enacted and promoted. It is in recognition of this vital need that this Section is adopted as part of the Constitution of this state.
(b) The legislature shall have authority to enact legislation allowing to every person who operates a manufacturing establishment, as defined by the legislature, in the state of Louisiana, a direct credit against any tax or combination of taxes owed by such person to the state of Louisiana, or any parish, municipality, political subdivision or any other taxing authority of the state, the amount of which credit shall be proportioned to the amount of gas used in Louisiana by such person, in the operation and maintenance of the manufacturing establishment and which shall be at such rates and during such periods of time as the legislature shall determine. The laws enacted pursuant hereto may embrace all or any part of the authority granted herein and may provide, at the discretion of the legislature, that a manufacturing establishment shall use a minimum amount of gas before being entitled to the credit.
(c) Legislation adopted pursuant to this Section may provide for issuance of tax credit warrants executed by the collector of revenue or other state official designated by the legislature, which warrants shall be payable out of a special fund designated by the legislature for that purpose, to be known as the Industrial Development Fund. The tax credit warrants issued pursuant hereto and to laws enacted under this authority shall be obligations of the state of Louisiana.
(d) The legislature may dedicate a portion of any tax or taxes for the purpose of establishing and maintaining the Industrial Development Fund, provided that no such dedication shall infringe on any dedications allowed by other Sections of this Constitution.
(e) If any provision or item of this Section or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Section which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Section are hereby declared severable.
CALOGERO, Chief Justice, concurring.
My reason for concurring is to point out additional reasons for declaring LSA-R.S. 33:130.18 unconstitutional.
Appellant argues that LSA-R.S. 33:130.18 does not create a tax exemption at all, noting that the law does not even contain the word "exemption" but rather defines the scope of the special service districts' power to tax. Appellants also argue that ad valorem tax exemptions are addressed in Title 47 of the Revised Statutes. Neither argument has merit, in my opinion.
It is well settled under this court's prior decisions that the words and form used in granting an exemption are not important. Meyers v. Flournoy, 209 La. 812, 25 So.2d 601, 603 (1946). "If, in their essence, they create an exemption or the equivalent of an exemption, the immunity from tax liability necessarily follows." Id., citing Hibernia Nat'l Bank v. Louisiana Tax Commission, 195 La. 43, 196 So. 15 (1940). Thus, the fact that LSA-R.S. 33:130.18 does not contain the word "exemption" is irrelevant. If the statute allows an entity to escape liability for ad valorem taxes, then it effectively grants an exemption. In this case, it does so in contravention of Article 7, Section 21 of the Louisiana Constitution of 1974.
Furthermore, appellant's argument that ad valorem tax exemptions are addressed only in Title 47 of the Revised Statutes is not meritorious. For a case in which this court discussed the issue of ad valorem tax exemptions created by another section of Title 33, see Slay v. La. Energy & Power Authority, 473 So.2d 51 (La.1985).
I therefore concur.
*706 DENNIS, Justice, concurring.
I respectfully concur. After considering the oral and written arguments of the parties, I believe that the opinion of the court reaches the correct result. I have lingering doubts, however, as to certain issues, viz., whether La.R.S. 33:130.18's limitations upon special districts' taxation authority are "exemptions" under Article VII, § 21 of the 1974 Louisiana Constitution, and whether Article VI, § 18 and 19 of the 1974 Louisiana Constitution were intended to reserve the legislature's inherent power to delegate the same forms of limited taxing authority to industrial areas and special districts as existed at the time of adoption of the 1974 Constitution.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Marcus, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).