685 So.2d 567 (1996)
INTERNATIONAL PAPER COMPANY, Plaintiff-Appellee,
v.
Sheriff William Earl HILTON, etc., et al., Defendants-Appellants.
No. 96-212.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
Writ Denied March 7, 1997.
*568 Harry Brenner Sadler, John Patrick Doggett, Alexandria, for International Paper Company.
W. Bernard Kramer, Alexandria, for Sheriff William Earl Hilton, etc., et al.
Thomas Wells, Alexandria, for Rapides Parish Police Jury.
Before DOUCET, C.J., and SAUNDERS, WOODARD, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
Defendants, Rapides Parish Sheriff William Earl Hilton and Assessor Ralph Gill, and the intervenor, Rapides Parish Police Jury, appeal a summary judgment rendered in favor of the plaintiff, International Paper Company, in its suit for the refund of ad valorem taxes, assessed for the benefit of Fire Protection District Number 4. International Paper paid these taxes under protest. The trial court held that the Fire Protection District Number 4 did not possess the jurisdiction necessary to assess and, in fact, illegally assessed International Paper's "industrial area" for ad valorem taxes. The trial court ordered Sheriff Hilton to refund to International Paper the $123,740.23 it had paid under protest. The trial court also denied International Paper's motion for summary judgment on its claim for taxes paid under protest which were levied by the Kolin-Ruby Wise Waterworks District. This separate determination is not before this court on appeal.
Sheriff Hilton, Assessor Gill, and the Police Jury (Appellants) maintain that the trial court erred in the following particulars:
(1) Considering legally unauthenticated evidence and evidence prepared after the date of the hearing on the motion for summary judgment;
(2) Finding that Fire Protection District Number 4 is a "newly created special service district" as contemplated by La.R.S. 33:130.16;
(3) Finding that International Paper is not estopped from challenging the taxing power of Fire Protection District Number 4;
(4) Finding that International Paper is not required to furnish all services listed in La.R.S. 33:130.15 to be entitled to the benefit of La.R.S. 33:130.16; and
(5) Failing to find that La.R.S. 33:130.16 creates a tax exemption which is not authorized under the State Constitution of 1974.
For the following reasons, we conclude that the trial court improperly granted summary judgment in this case. Therefore, we reverse and remand the matter for further proceedings.

FACTS
Prior to signing the judgment, the learned trial judge issued written reasons for judgment on August 30, 1995. The portion of *569 these thorough reasons which are pertinent to the issues raised on appeal are as follows:
This action arises out of the Petition of International Paper Company (IP) to recover ad valorem taxes paid under protest for the year 1994. The protested taxes were levied, respectively, by Rapides Parish Fire Protection District No. 4 ($123,740.23) and Kolin-Ruby Wise Waterworks District No. 11A ($35,084.72).
Both of these districts are special service districts created by the Police Jury of Rapides Parish, Louisiana. Prior to 1994 the taxes of these two districts, though levied, were not assessed to IP whose property lay within the boundaries of an Industrial Area created by the Rapides Parish Police Jury on November [1]3, 1973. This was based on La. R.S. 33:130.18 which provided an immunity from new taxes levied by a Special Service District to any property in the District which was within the boundaries of a designated Industrial Area[.] In 1994 the Louisiana Supreme Court declared 33:130.18 unconstitutional in that the Legislature had created a "tax exemption" not permitted under the Louisiana Constitution of 1974. In Re: Pitre 630 So.2d 700 (La.1994) (rehearing denied February 10, 1994). Following this decision, the Assessor of Rapides Parish assessed IP for the annual taxes of these two special service districts.
To understand the issues involved a review of the law enabling parish governing authorities to create Industrial Areas and the effects thereof must be reviewed. These laws are included in La. R.S. 33:130.11 through 130.18, inclusive. Sections 130.11 through 130.14 generally provide for the procedure for creating such areas and their exclusive use by facilities that are industrial in character. Section 130.15 requires the industry or industries in an Industrial Area to provide and maintain the services normally provided by parish or local governments, enumerating . . . "the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal." Where these are provided in a designated Industrial Area, it ... "shall not be subject to annexation." (130.15)
Section 130.16 simply provides as follows:
"No portion of an Industrial Area may be included within any newly created special service district furnishing any of the services enumerated in R.S. 33:130.15." (Emphasis supplied)
Obviously, the primary purpose of RS 33:130.15 and 130.16 is not to offer tax incentives or to grant immunity or exemptions from taxation, but to prevent those industries which provide their own utilities and other customary public services from being subsequently annexed into or included within any entity which also provides these services.
Section 130.18, which was considered by the Supreme Court in Pitre, covers an entirely different situation. Under that section, if an Industrial Area is created within the territory of a pre-existing special service district which furnishes any of those services required of industries under 33:130.15, then, the territory of the Industrial Area continues to be subject to the previously levied taxes of the special service district. Obviously the purpose of this is to not undermine the tax base of the special service district by excluding property previously included within its boundaries. However, Section 130.18 goes on to provide that ... "no new tax levied by such special service district shall apply to any territory within an Industrial Area..." (emphasis supplied) In Re: Pitre held that this language created a tax exemption to property within the boundaries of the special service district, and accordingly, was unconstitutional. Obviously, finding section 130.18 unconstitutional because of an impermissible tax exemption does not render sections 130.15 and 130.16 unconstitutional as these sections grant no immunity from taxation.
In the instant case it is undisputed that the territory of the Industrial Area in question lies within the present boundaries of both of these special service districts. The inquiry at this point is whether or not the territory of the Industrial Area was included in the boundaries of a subsequently *570 created special service district, which is prohibited under section 130.16, or was included in an pre-existing special district at the time it was created, which would fall within the Pitre decision. The Court will consider each district individually.
RAPIDES PARISH FIRE PROTECTION DISTRICT NO. 4
This District was first created on April 12, 1966. The territory of the initial district included all of Ward 9 less and except that area included within the city limits of Pineville. This description includes the territory that eventually became the subject [I]ndustrial Area.
On July 8, 1969 the boundaries of this district were amended to exclude a tract of land that encompassed the future territory of the subject Industrial Area. At that same time, the area excluded from the Fire District was designated as the territory of a newly created fire protection district, i.e. the Kolin-Ruby Wise Fire Protection District No. 11A. Accordingly, on July 8, 1969, the territory which was later to become the subject Industrial Area was no longer in Fire Protection District No. 4, but was included in the newly created Kolin-Ruby Wise Fire Protection District No. 11A.
The subject Industrial Area was created by the Police Jury on November 13, 1973. When created, the territory of the Industrial Area was not within the boundaries of Fire Protection District No. 4, but was included in the boundaries of Kolin-Ruby Wise Fire Protection District No. 11A. Under 130.18 the Industrial Area was immune from any new taxes that might be levied by the Kolin-Ruby Wise Fire Protection District No. 11A as this immunity was permitted under the Louisiana Constitution in effect at that time.
On March 11, 1980 the Rapides Parish Police Jury specifically dissolved both Fire Protection District No. 4 and the Kolin-Ruby Wise Fire Protection District No. 11A. On that same date the Police Jury created Fire Protection District No. 4. Although this Fire Protection District had the same name as one of the fire protection districts dissolved at that meeting, it was in the opinion of the Court, a newly created fire protection district. According to the minutes of that meeting, a notice of the intention to create said district had been published in accordance with law; no objections or protests had been presented relative to the creation of the proposed fire protection district and the boundaries of the new Fire Protection District No. 4 were significantly different than those of Fire Protection District No. 4 which had been dissolved. The boundaries included a part, but not all, of the territory previously included in the Kolin-Ruby Wise Fire Protection District No. 11A and for the first time since the creation of the subject Industrial Area, the boundaries of Fire Protection District No. 4 included the territory of the subject Industrial Area. It is the opinion of the Court that the inclusion of the Industrial Area within the boundaries of Fire Protection District No. 4, created on March 11, 1980, was contrary to the prohibition contained in Section 130.16, and therefore the Industrial Area is not subject to the jurisdiction or taxing authority of that district. Accordingly, as to the Rapides Parish Fire Protection District No. 4, plaintiff's Motion for Summary Judgment is granted, and the taxes levied by this District and paid under protest are hereby ordered refunded.
. . . .
Defendants raise several other arguments which merit response. Defendants argue that if in fact Fire Protection District No. 4 was created after the subject Industrial Area, IP had an opportunity and an obligation to object to such inclusion at the time of the creation of this special service district. Having failed to do so it cannot now object to payment of taxes levied by the District. In answer to this argument, the Court points out that an entity does not have to object to being included in a jurisdiction that it cannot be included in by statutory law. The inclusion of the Industrial Area in the newly created Fire Protection District No. 4, which furnishes services enumerated in Section 33:130.15, is specifically prohibited by Section 130.16. As the Police Jury had *571 no authority to include the territory of the Industrial Area into the boundaries of Fire Protection District No. 4 the territory of the Industrial Area is illegally included in those boundaries and cannot be taxed by the special service district.
Defendants further argue that IP does not in fact furnish the utilities enumerated in Section 130.15, and therefore, is not in fact an Industrial Area entitled to the prohibition provided for in 130.16. It is the Court's opinion that such a fact determination would not be relevant to a decision in these proceedings. IP's property was designated an Industrial Area by the Rapides Parish Police Jury based on a finding that the industry or industries within the area were providing the utilities and services mandated by 130.15. If this is not a fact, or if this is no longer a fact, Section 130.17 provides for the authority and procedure to abolish the Industrial Area. Until this is done by the parish governing authority, the designation of an Industrial Area remains, and the industry or industries therein are entitled to all benefits provided by law.
On December 15, 1995, the trial court signed a judgment in accordance with these reasons. This appeal followed.

LAW
Generally, the criterion by which a motion for summary judgment is to be evaluated is provided in La.Code Civ.P. art. 966(B), which provides, in pertinent part, as follows:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
As an appellate court, we review a summary judgment on a de novo basis by applying the same standard of proof as the trial court to determine whether summary judgment in a particular case is appropriate. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94); 639 So.2d 730. In Smith, the supreme court articulated an exhaustive review of the statutory and jurisprudential rules applicable to motions for summary judgment. Within that discussion, the supreme court delineated the shifting burden of proof as follows:
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P. Art. 966(B); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). In making this determination, the mover's supporting documents must be closely scrutinized and the non-mover's indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Vermilion, 397 So.2d at 493; Pace [v. Zilka,] 484 So.2d [771] at 773.
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Sanders, supra.
Id. at 752.
Additionally, when the burden shifts to the non-moving party, the opponent may no longer rest on the allegations and denials of his pleadings. He must present positive proof that genuine issues of material fact remain in dispute. Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3 Cir. 1992).

*572 ASSIGNMENT OF ERROR NUMBER ONE
In their first assignment of error, appellants contend that the trial court erred in considering unauthenticated evidence and evidence prepared by International Paper after the hearing. The allegedly unauthentic evidence includes an August 10, 1994 newspaper article, an April 8, 1994 letter from the assessor, and two letters from the Louisiana Tax Commission. The post-hearing evidence includes the affidavit of E. Cecil Wiley and maps depicting the area in question which form the basis for Wiley's affidavit. In response, International Paper argues that the trial court did not rely on any of the unauthenticated exhibits in making its decision. Additionally, International Paper maintains that the Wiley affidavit and related maps were properly admitted after the hearing, pursuant to the trial judge's discretion to control the order of evidence presentation and to leave the record open for additional submissions.
The record indicates that the newspaper article and the four letters, which were included as exhibits, were not sufficiently authenticated. However, it is also clear that, in reaching its conclusions, the trial court relied not on these exhibits but on the minutes of the Police Jury, which were certified as authentic by its secretary. The chronological facts as stated by the trial court in its written reasons indicate that they were derived from these minutes. Although the admission of such unauthentic evidence is technically erroneous, no harm was done since these exhibits were not used by the trial court.
The Wiley affidavit indicates that it was executed on May 31, 1995, approximately two weeks after the hearing. In the affidavit, Wiley refers to three maps of the geographic area in question, one on paper and two on transparent overlays. The affidavit and the maps were attached as exhibits to International Paper's post-hearing supplemental memorandum in support of summary judgment filed on June 21, 1995.
La.Code Civ.P. art. 967 provides, in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

(Emphasis added.)
The record indicates that at the end of the hearing the trial court ruled that International Paper could file a post-hearing brief on the content of the special service districts before they were changed. The appellants were also given an opportunity to file a post-hearing brief in opposition, which they did. We conclude that the affidavit and maps were properly admitted after the hearing pursuant to the discretion granted the trial court by La.Code Civ.P. art. 967 to permit supplemental affidavits.

ASSIGNMENT OF ERROR NUMBER TWO
In their second assignment of error, appellants maintain the trial court erred in finding that Fire Protection District Number 4 was "newly created" in March 1980. They contend that, at its March 11, 1980 meeting, the Police Jury merely changed the existing boundaries of Fire Protection District Number 4 and did not newly create the district. International Paper counters that the trial court correctly found that the district was "newly created" as of March 11, 1980.
During the March 11, 1980 meeting of the Rapides Parish Police Jury, the Fire Protection District Number 4 was dissolved. On that same date, the Police Jury created Fire Protection District Number 4. While the terms dissolved and created have definite, distinct definitions, the intent of the Police Jury is questionable. The Police Jury may have intended to dissolve one fire protection district and create another, or reorganize the fire protection districts and refix the boundaries at the March 11, 1980 meeting.
*573 Thus, we find that a question of fact exists as to whether the Police Jury intended to create a new district providing new services or reorganize an existing fire protection district with existing services. The judgment of the trial court granting International Paper's motion for summary judgment on this issue is reversed.

ASSIGNMENT OF ERROR NUMBER THREE
Appellants next contend the trial court erred in not finding that International Paper is estopped from challenging the taxing power of the fire protection district because it failed to object at the time of the district's creation. As authority for their argument, appellants cite La.R.S. 40:1494, which provides:
At the place and time specified in the notice provided for in R.S. 40:1493, the governing authority of the parish shall hear all objections which may be interposed to the boundaries of the district and to the inclusion of the property proposed to be included in the district. It may adjourn the meeting from time to time. At this hearing the parish governing authority may change the boundaries of the proposed district by excluding therefrom the lands of persons objecting or by including therein the lands of persons petitioning to be included therein. After disposing of all objections, the parish governing authority, if it approves the creation of such district, shall adopt a resolution fixing the boundaries of the territory within the parish to be included in such district. However, as provided in R.S. 40:1492, the governing authority of any municipal corporation which is included in the district must, by resolution adopted after the boundaries of the territory of the parish to be included in the district are fixed, concur in the fixing of the boundaries before the action of the parish governing authority becomes final. The decision of the parish governing authority, concurred in by any municipality as provided, is final and conclusive as regards that parish. Notice of the formation of the district shall be given immediately by one publication in any newspaper in which the original notice of hearing was published.
(Emphasis added.)
We find no error on this point. As correctly stated by the trial court, an entity need not object to being illegally included in a jurisdiction by a governing authority. In other words, International Paper was not obligated to object in 1980 to an action taken then by the Police Jury for which the Police Jury was not statutorily empowered to take.

ASSIGNMENT OF ERROR NUMBER FOUR
Appellants also contend that the fact that International Paper does not provide all of the services listed in La.R.S. 33:130.15 makes its paper mill, in fact, not an "industrial area." The record indicates that International Paper purchases water from the City of Alexandria and the Kolin-Ruby Wise Waterworks District Number 11A.
La.R.S. 33:130.15, which was repealed by Act number 194, § 2 of 1995, effective June 14, 1995, provided in pertinent part:
Those industries located within the boundaries of any industrial area shall furnish and maintain individually or as a group the following services usually provided by parish or local governments: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. Any industrial area which furnishes and maintains all of the above enumerated services shall not be subject to annexation. Any industrial area heretofore designated which complies with the provisions hereof shall be considered validly designated hereunder and any agreement or resolution with respect thereto shall be considered to include all services herein enumerated though not specifically included therein. Agreements between the industries located within the boundaries of an industrial area and the governing authority of the parish and/or any municipality or municipalities situated therein may be made for mutual fire protection in grave emergencies. *574 (Emphasis added.) At the time the Police Jury designated the property in 1973 as an industrial area, the Police Jury presumably made a finding that the Pineville Kraft paper mill provided all of these services.
As the trial court correctly pointed out, International Paper is entitled to all of the benefits of the "industrial area" designation until such time as the Police Jury decides to abolish the "industrial area" pursuant to the procedures outlined in La.R.S. 33:130.17. The fact that all the services are not self-provided is of no moment.

ASSIGNMENT OF ERROR NUMBER FIVE
For their fifth assignment of error, appellants argue the trial court erred in not finding that La.R.S. 33:130.16 is a constitutionally impermissible tax exemption. We disagree. La.R.S. 33:130.16 is, as correctly determined by the trial judge, not an exemption from taxation but a limitation upon a special service district's power to impose a tax upon an "industrial area" in the first place. An exemption is, by definition, an exception to an entity's obligation to otherwise pay an existing, legally enacted tax. La.R.S. 33:130.16 is not an exemption from taxation; it imposes a prohibition on a newly created special service district's jurisdictional power to tax an "industrial area." Therefore, the trial court did not err in this regard.

DECREE
For these reasons, the summary judgment rendered in favor of the plaintiff, International Paper, and against the defendants, Sheriff Hilton and Assessor Gill, is reversed and the matter is remanded to the trial court for further proceedings. In all other respects, the judgment of the trial court is affirmed. The costs of this appeal are to be divided between the parties: 50% to be paid by the defendants appellants, Sheriff Hilton and Assessor Gill, and 50% to be paid by the plaintiff, International Paper Company. All other costs are to await final disposition of this matter.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SULLIVAN, J., dissents and assigns reasons.
SULLIVAN, Judge, dissenting.
For the following reasons, I respectfully dissent.
In analyzing and finding meritorious appellants' second assignment of error, the majority concludes that the words "dissolved," explicitly used by the Police Jury in a resolution terminating the boundaries and authority of former Fire Protection District Number 4, and "created," explicitly used by the Police Jury in a separate ordinance setting up the new and geographically different Fire Protection District Number 4, give rise to a material factual dispute as to the Police Jury's intent. The majority concedes that "dissolved" and "created" have "definite, distinct definitions," but nevertheless decides not to follow the clear meanings of these words.
A review of the minutes of the March 11, 1980 Police Jury meeting and the maps attached to the Wiley affidavit reveal that, for seven years prior to this meeting, International Paper's "industrial area" was not geographically included within Fire Protection District Number 4. At that meeting, the Police Jury explicitly dissolved the existing district by resolution and created the new district by ordinance. Indisputably, for the first time, the "industrial area" was then geographically located within the boundaries of Fire Protection District Number 4 as newly created. This evidence of what plainly took place at the March 11, 1980 meeting was sufficient to satisfy International Paper's initial burden of proof on summary judgment that the district was "newly created." Thereafter, the burden shifted to the appellants, without resting on their allegations, to present evidence of a material factual dispute as to whether the district was "newly created" or not. In my opinion, appellants failed to do so, and, therefore, the trial court correctly determined that, pursuant to La.R.S. 33:130.16, Fire Protection District Number 4 *575 was "newly created" at the March 11, 1980 meeting.
This case does not present a material question of fact on the Police Jury's intent to either create a new district or reorganize an existing district. It is clear and not disputed that the Police Jury "dissolved" the old district and its boundaries and "created" the new district with different boundaries which encompassed the "industrial area." I disagree with the majority's position that the Police Jury's use of this language gives rise to a factual dispute. Words have meaning, and, as conceded by the majority, these two verbs have "definite, distinct definitions." These meanings should not be ignored.
In sum, I would affirm the trial court's grant of summary judgment in favor of International Paper.