995 So.2d 1190 (2008)
George PHILLIPS, Jr.
v.
LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT.
Nos. 2008-CA-0922, 2008-CA-1253.
Supreme Court of Louisiana.
December 2, 2008.
*1191 Mahtook & Lafleur, Kay A. Theunissen, for applicant.
Anthony Fazzio, Lafayette, for appellee.
TRAYLOR, Justice.
In this matter, the trial court granted summary judgment finding that several sections of the Code of Ordinances promulgated by the Lafayette City-Parish Consolidated Government, known collectively as the "junked vehicle ordinance," are unconstitutional on their face and as applied. This case comes before us on direct appeal, pursuant to La. Const. art. 5, Section 5(D).[1] For the reasons that follow, we reverse and set aside the trial court's judgment, finding that the trial court did not first determine whether this case may be disposed of on non-constitutional grounds before reaching the constitutional issue.

SECTIONS OF THE CODE OF ORDINANCES AT ISSUE
The Lafayette City-Parish Consolidated Government ("Lafayette") declared the presence of junked or abandoned motor vehicles, on public or private property, to be a public nuisance in 1997. Since that time, both the definition of a junked motor vehicle and the procedures for abatement of the public nuisance have been amended several times.[2] The specific sections of the Lafayette's Code of Ordinances applicable here are set forth below.
A "junked motor vehicle" is defined in Section 34-31:

*1192 Junked motor vehicle means any motor vehicle, the condition of which is one or more of the following:
(1) Wrecked;
(2) Dismantled;
(3) Partially dismantled; or
(4) Lawfully inoperable on public streets under the provisions of the various statutes and ordinances applicable in this jurisdiction as a result of significant damage, decay or destruction.
The fact that a motor vehicle is being stored or otherwise maintained for spare parts for the repair of any other motor vehicle or motor vehicles shall not exempt such vehicle from being determined to be a junked motor vehicle if it otherwise meets any of the conditions set forth hereinabove.

Junked motor vehicle does not include:
(1) Any motor vehicle in operable condition specifically adapted or constructed for racing or operation on privately owned drag strips or raceways, which is maintained or kept on private property.
(2) Any motor vehicle which is stored under a carport or in a garage.[3]
The section declaring the presence of a junked motor vehicle to be a public nuisance is addressed in Section 34-76:
Section 34-76. Declaration of public nuisance.
The presence of any junked motor vehicle and/or abandoned motor vehicle within the City-Parish shall be deemed and is hereby declared a public nuisance; and it shall be unlawful for any person to cause or maintain such a public nuisance by abandoning, wrecking, dismantling, partially dismantling, rendering inoperable, or discarding any motor vehicle on the real property of another or on public property or to suffer, permit, and allow any junked motor vehicle and/or abandoned vehicle to be parked, left, or maintained on his own real property, provided that this section shall not apply with regard to:
(1) Any junked motor vehicle in an enclosed building, which for the purposes of this chapter shall be considered to include a carport attached to a residence;
(2) Any junked motor vehicle in an enclosed building, which for the purposes of this chapter shall be considered to include a carport attached and/or free standing or detached from a residence; or
(3) Any junked motor vehicle in an appropriate storage place or depository maintained at a location where such business is authorized under the comprehensive zoning ordinance and other regulatory ordinances of [Lafayette].[4]
The authority to seize junked motor vehicles is set forth in Section 34-77:
Section 34-77. Seizure of junked motor vehicles and/or abandoned motor vehicles.
[Lafayette], through its duly authorized representative, may seize or otherwise hold any junked motor vehicle and/or abandoned motor vehicle which is found to be in violation of this ordinance. The owner thereof shall be entitled to regain possession upon the payment of such costs as may be fixed by the policing authority for the violation. The costs so fixed shall cover all charges for removing the vehicle to the place of *1193 holding as well as all other costs incurred during the period of holding.[5]
Lafayette provides for the notification to owners of junked motor vehicles of the declaration of a public nuisance and abatement procedures in Section 34-7[8]:[6]
Section 34-78. Notification of Owners.
A. Whenever any motor vehicle is determined to be a junked motor vehicle and/or an abandoned motor vehicle, [Lafayette], through its representative, shall cause a notice to be placed on the vehicle itself or given to the owner of the vehicle, if known, advising that the vehicle shall be removed within fifteen days after notice. If the vehicle is not removed pursuant to the notice, the vehicle may be removed by [Lafayette] and disposed of in accordance with the provisions of Section 34-78 or 34-79, depending upon the condition of the vehicle. If the vehicle is owned by someone other than the owner of the premises upon which the vehicle is located, [Lafayette] shall further give notice to the owner of the premises by either certified mail or hand delivery. If notice by certified mail is returned "refused" or "unclaimed", notice shall be deemed to have been given.
B. [Lafayette] shall notify the owner of the premises and shall include in the notice posted on the vehicle that in lieu of removal, the owner of the premises and/or of the vehicle may remit the total amount charged for towing, together with a written letter of authority authorizing [Lafayette] to remove and dispose of the motor vehicle. The letter of authority shall be on a form prescribed and furnished by [Lafayette]. In the event that anyone other than the person determined to be the owner of the vehicle grants authority for removal of the vehicle and pays the fees for same, removal shall not take place until the fifteen day delay accorded the owner of the vehicle has expired in order to permit the vehicle owner to remove same at his expense. The owner of the property, the occupant thereof in instances where same is not the owner and the occupant has been given notice in accordance with this ordinance, and the owner of the vehicle are each responsible for removal of same equally, and [Lafayette] may choose to proceed against all or any one of the foregoing to compel removal of same.
C. If the motor vehicle is not removed within fifteen days from the date of the posting of the notice or authority and the fee given to [Lafayette] to remove same within said delays, the motor vehicle may be removed and disposed of by [Lafayette] in accordance with the provisions of Section 34-79 or 34-80, as applicable. In such event, [Lafayette] shall be entitled to recover the $100.00 fine and any and all costs which are incurred by [Lafayette] with reference to the removal, storage and/or disposal of the motor vehicle. In the event the owner of the premises upon which the *1194 vehicle is located is to be taxed for such costs, such costs may be represented and secured by a lien filed in the public records of the Lafayette Parish Clerk of Court attesting to the costs incurred. Such lien shall be recoverable and may be enforced in the same manner and by the same procedure for collection of sums due for grass cutting liens.[7]
Lafayette declared it to be a misdemeanor criminal offense for the owner of a junked motor vehicle to fail to abate a public nuisance in Section 34-81:
Section 34-81. Criminal Liability for Noncompliance With Removal Order.
Any person who fails to comply with a properly posted and/or served notice for the removal of a motor vehicle pursuant to this section shall be guilty of a misdemeanor and shall be subject to a fine of up to $500.00 or a prison term of up to six months, or both, for each violation. [Lafayette]'s representative handling the issuance of the notice to remove an offensive motor vehicle shall be authorized to coordinate such efforts with the appropriate law enforcement agency and, in conjunction therewith, shall be entitled with said law enforcement agency to issue a misdemeanor summons for any violation of this section.[8]

FACTS AND PROCEDURAL HISTORY
George Phillips, Sr. ("Mr. Phillips") is the owner of a 1988 Plymouth Grand Fury, a 1987 Plymouth Voyager, a 1985 Lincoln Town Car, and a 1995 Dodge Pickup that he parked on his private property located in Lafayette, Louisiana. On June 29, 2006, Officer Blanton, of the Lafayette City Police Department, placed notices on five vehicles parked on Mr. Phillips' private property advising that the vehicles were in violation of Lafayette's junked vehicle ordinance.[9] The Notice to Abate a Public Nuisance, placed on Mr. Phillips' vehicles, stated the following:
This vehicle must be abated within 15 days or it will be impounded under City-Parish Code of Ordinances Section [3]4-76 through 34-81. This ordinance states, a junked motor vehicle, is defined as:
Any motor vehicle which is functionally inoperable as a result of the condition in which it is found, which condition shall include, but [sic] not limited to, the state of being damaged and/or wrecked and/or dismantled and/or partially dismantled.
The owner is responsible for making the vehicle functionally operable, removing vehicle from property, or placing vehicle in a garage or carport. Owner may also relinquish the vehicle to the Lafayette Consolidated Government for a fee of $100.00.
You have 15 days from the date posted below to choose one of the above mentioned options and notify CJSS at (337)291-7121City or (337)236-5657 Ext. 23Parish, of the action taken. Failure to do so will subject you and/or the property owner, to the issuance of a misdemeanor summons and cause the vehicle to be removed at your own expense.

*1195 If you desire, you may request a hearing before the Violation date to show just cause why your vehicle should not be impounded.[10]
In deposition testimony, Officer Blanton stated that he placed the notices on the vehicles because the vehicles looked like they were being worked on and may not have been functional.[11]
In addition to the physical notices placed on the vehicles, Officer Blanton also sent letters by certified mail to Mr. Phillips, both as the owner of the property and as the owner of the vehicles, again advising that the vehicles were a public nuisance. These letters advised how to abate the nuisance and that the vehicle owner could call a stated telephone number to request a hearing if the owner felt that the vehicle in question was not in violation of the ordinance.
Mr. Phillips asserted that he contacted all of the persons he was told to contact regarding seizure of his vehicles. However, on November 14, 2006, four and one-half months after Officer Blanton's initial action regarding the vehicles, Officer Blanton returned to Mr. Phillips' property. At that time, Officer Blanton served Mr. Phillips with a Notice of Summons and Citation for failure to abate a nuisance for each of the four remaining vehicles still parked on the property.
On November 20, 2006, the four vehicles were seized by Officer Blanton and towed from Mr. Phillips' property. Mr. Phillips stated that when the vehicles were seized, each vehicle's legal documentation and insurance information were also taken. Further, Mr. Phillips stated that he was using the vehicles in connection with his businesses at the time of seizure. Misdemeanor criminal charges were filed against Mr. Phillips for failing to abate a public nuisance and the prosecution of these charges remains pending in this matter.
After his vehicles were seized, Mr. Phillips received a Notice of a Right to a Hearing for each of the seized vehicles. By letters dated December 13 and December 20, 2006, Mr. Phillips requested a hearing for each of the vehicles seized and directed his requests to the chief of police by certified mail as directed by the notice. By letter dated January 29, 2007, Mr. Phillips was advised that his request for hearing should have been directed to the Criminal Justice Support Services Division, contrary to the directions on the notice.
Prior to Mr. Phillips' receipt of the above-referenced correspondence, Mr. Phillips filed a petition for damages claiming that Lafayette, through Officer Blanton, overreached its authority pursuant to Lafayette's junked vehicle ordinance and "improperly, illegally, without just cause, and without due process of law, seized, caused to be seized or ordered the seizure of [his vehicles]." Mr. Phillips sought damages from Lafayette for trespass, confiscation and conversion of the four vehicles, including damages for embarrassment, humiliation, and mental pain and anguish.
Lafayette answered that Mr. Phillips violated the junked vehicle ordinance and seizure of the subject vehicles was proper. Subsequently, Lafayette filed a motion for summary judgment requesting that the trial court dismiss Mr. Phillips' lawsuit, reiterating its argument that Lafayette had legally seized Mr. Phillips' vehicles.
*1196 Thereafter, Mr. Phillips amended his initial petition, re-alleging all of the allegations recited in his original filing and further seeking a declaratory judgment from the trial court that Lafayette's junked vehicle ordinance was unconstitutional on its face and as applied. In addition to his amended petition, Mr. Phillips filed a motion seeking summary adjudication that, as a matter of law, he was entitled to damages for wrongful seizure of his vehicles under the junked vehicle ordinance, i.e. on non-constitutional grounds. Specifically, Mr. Phillips maintained that his vehicles were in good condition, could be driven, did not appear junked, had current inspection stickers, had current registration certificates, were properly titled, were insured, and were legally operational on a public street.[12] Further, Mr. Phillips contended that Lafayette had ignored his requests for a hearing regarding his vehicles. Mr. Phillips argued in the alternative that he was entitled to a declaratory judgment that the junked vehicle ordinance was unconstitutional on its face and as applied.
Lafayette answered Mr. Phillips' amended petition and filed a cross motion for summary judgment, seeking to establish that, as a matter of law, Lafayette was entitled to dismissal of Mr. Phillips' lawsuit because the vehicles at issue had been legally seized pursuant to the junked vehicle ordinance and there was no basis on which to declare the junked vehicle ordinance unconstitutional.
On December 17, 2007, the trial court held a hearing on the cross-motions for summary judgment. In oral reasons for judgment stated after the hearing, and in written reasons for judgment subsequently issued, the trial court indicated he had two concerns with the junked vehicle ordinance. First, the court believed that sections of the ordinance at issue were subjective and lent themselves to arbitrary enforcement. The trial court stated that there was a genuine issue of material fact as to whether Officer Blanton was acting in conformity with a constitutional ordinance. Second, the trial court had a problem with the hearing procedure, noting that Mr. Phillips was directed to request a hearing from the chief of police but, after doing so, was informed by Lafayette that he was supposed to contact a different department to request a hearing. The trial court signed a judgment: (1) denying Lafayette's cross-motion for summary judgment; (2) granting in part the motion for summary judgment filed by Mr. Phillips, insofar as the junked vehicle ordinance was found to be unconstitutional as written and as applied; and (3) denying in part the remainder of Mr. Phillips' motion for summary judgment regarding wrongful seizure.
Following the trial court's ruling, Lafayette filed both an application for supervisory writ and a direct appeal in this court. Lafayette's writ was granted and consolidated with its direct appeal.[13] Mr. Phillips filed a motion seeking to dismiss Lafayette's appeal, arguing that the granting of a partial motion for summary judgment was not final and not subject to appeal. This court subsequently denied Mr. Phillips's motion.

LAW AND DISCUSSION
Statutes are presumed valid and their constitutionality should be upheld whenever possible. State v. Hatton, 2007-2377, *1197 p. 10 (La.7/1/08), 985 So.2d 709, 719; State v. Citizen, XXXX-XXXX, p. 11 (La.4/1/05), 898 So.2d 325, 334 (La.2005); Williams v. State, Department of Health and Hospitals, XXXX-XXXX, p. 2-3 (La.1/26/96), 671 So.2d 899, 901-902. This court has long adhered to the principle that it should avoid constitutional questions whenever a case can be disposed of on non-constitutional grounds. Sims v. Mulhearn Funeral Home, Inc., XXXX-XXXX, p. 5 (La.5/5/07), 956 So.2d 583, 588. This court does not generally reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case. Cameron Parish School Board. v. Acands, Inc., XXXX-XXXX, p. 4 (La.1/14/97), 687 So.2d 84, 87; Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission, 403 So.2d 13, 23 (La.1981). Accordingly, this court's approach in cases such as this is to determine whether the case may be disposed of on non-constitutional grounds before reaching the constitutional issue. Louisiana Municipal Association v. State, XXXX-XXXX, p. 24 (La.1/19/05), 893 So.2d 809, 836; In re: Pitre, 1993-2322 (La.1/14/94), 630 So.2d 700, 701.
Lafayette argues that the trial court's finding that the ordinances at issue are unconstitutional was premature. Specifically, Lafayette contends that, given the trial court's finding that the circumstances surrounding the tagging, citation and seizure of the vehicles are disputed, the trial court should have first considered the nonconstitutional issues raised in Mr. Phillips' pleadings. We agree.
In the instant case, the trial court should have first considered whether Mr. Phillips' vehicles were "junked motor vehicles," as defined by Lafayette's Code of Ordinances, Section 34-31. Further, there appear to be disputed facts with regard to the allegations that Lafayette seized the vehicles without just cause and without due process of law. The trial court's consideration of Mr. Phillips' allegations should have started with application of the junked vehicle ordinance to the facts at hand. A determination of the constitutional issues raised in the alternative by Mr. Phillips should only be considered after these non-constitutional issues have been resolved.

CONCLUSION
For the reasons set forth above, the judgment of the trial court declaring the various sections of the Lafayette Code of Ordinances, collectively known as the "junked vehicle ordinance" to be unconstitutional is reversed and set aside. This matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
REVERSED AND REMANDED.
Section 5. Supreme Court; Jurisdiction; Rule-Making Power; Assignment of Judges
NOTES
[1] La. Const. art. 5, Section 5(D) states, in pertinent part:

Section 5. Supreme Court; Jurisdiction; Rule-Making Power; Assignment of Judges
D) Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed.
[2] The trial court explained the history of the ordinance, as follows: "In 1997, Lafayette enacted ordinances [sic; sections] dealing with junked vehicles, Code of Ordinances, Chapter 14 1/4. The ordinances [sic; sections] were re-numbered in 2000 such that the definitions portion is referenced as 34-31 and the specific ordinances [sic; sections] dealing with junked or abandoned vehicles are referenced as 34-76 through 34-81." Vol. 4, p. 794.
[3] Lafayette City-Parish Consolidated Government, La., Ordinance No. O-082-2006 (2006); See Vol. 2, p. 363-372.
[4] Lafayette City-Parish Consolidated Government, La., Ordinance No. O-363-97 (1997); See Vol. 2, p. 325-340.
[5] Id.
[6] There is a typographical error in Lafayette City-Parish Consolidated Government, La., Ordinance No. O-025-2003 (2003), which amended this section to the form at issue herein, and cites this provision as Section 34-79. From the context of the provision, it is clear that the actual section meant to be cited is Section 34-78. See Vol. 2, p. 351-352. Section 34-79, which deals with abandoned motor vehicles that do not qualify as "junked motor vehicles," is not at issue here and will not be reproduced. Similarly, as there is no record indication that Mr. Phillips' vehicles were sold or otherwise disposed of, Section 34-80, which details the procedures for the sale or disposal of seized vehicles, will also not be reproduced here.
[7] Lafayette City-Parish Consolidated Government, La., Ordinance No. O-025-2003 (2003); See Vol. 2, p. 351-356.
[8] Id.
[9] Officer Blanton initially placed a notice on five vehicles on Mr. Phillips' property. Between the time of the initial placement of notice, and when Officer Blanton returned several months later, one of the vehicles which had been tagged as a junked motor vehicle was removed from the property and is not at issue here.
[10] Vol. 1, p. 41.
[11] Due to the fact that this matter comes to the court as a summary proceeding, the facts and evidence are limited to the exhibits supporting the motions for summary judgment.
[12] In support of his motion, Mr. Phillips' attached as exhibits the vehicle registrations and proof of insurance for the seized vehicles. This evidence is disputed by Lafayette.
[13] Phillips v. Lafayette City-Parish Consolidated Government, XXXX-XXXX (La.6/20/08), 984 So.2d 4.