966 So.2d 545 (2007)
INTERNATIONAL PAPER COMPANY, INC.
v.
Sheriff William Earl HILTON, et al.
No. 2007-C-0290.
Supreme Court of Louisiana.
October 16, 2007.
*547 Durio, McGoffin, Stagg & Ackermann, Steven Gerald Durio, Robert Louis Broussard, Lafayette, for applicant.
James C. Downs, District Attorney, Robert Lewis Bussey, Assistant District Attorney; Foley & Judell, Jerry R. Osborne, New Orleans, for respondent
John Paul LeBlanc, for amicus curiae, Louisiana Association of Business and Industry.
Shannan Sweeney Rieger, Charles S. McCowan, Jr., Baton Rouge, and M. Dwayne Johnson, for amicus curiae, Louisiana Chemical Association.
Dannie P. Garrett, III, Baton Rouge, for Police Jury Association of Louisiana.
KIMBALL, Justice.[*]
We granted certiorari in this matter to determine whether a pre-existing industrial area created under Article VI, § 18 of the Louisiana Constitution of 1974 and La. R.S. 33:130.11 et seq. can be subject to inclusion and taxation by a newly created special service district providing services not enumerated in former La. R.S. 33:130.15 (repealed 1995 and re-enacted in La. R.S. 51:1202).[1] We also granted certiorari to determine whether the court of appeal correctly ruled that La. R.S. 33:130.16 has been "tacitly repealed" by La. R.S. 51:1203. For the following reasons, we find that the court of appeal correctly determined that industrial areas are to be excluded only from inclusion and taxation of special service districts when such special districts provide those services enumerated in former La. R.S. 33:130.15 (repealed 1995), now set forth in La. R.S. 51:1202. Accordingly, the court of appeal's decision upholding summary judgment in favor of the defendants is affirmed. However, we also find that La. R.S. 33:130.16 has not been tacitly repealed, and in that respect, the court of appeal erred.

FACTS AND PROCEDURAL HISTORY
International Paper Company, Inc. (formerly Pineville Kraft Corporation and *548 hereinafter "plaintiff" or "International Paper") owns a parcel of land in Rapides Parish located within an industrial area that was created by Resolution of the Rapides Area Planning Commission and the Rapides Parish Police Jury on November 13, 1973. Ward 9 Recreation District was created on October 12, 1976, by Ordinance of Division Five (5), which provided, in pertinent part:
A Recreation District is hereby created within the Parish of Rapides, State of Louisiana, which recreation district shall comprise and embrace all of Ward 9 of Rapides Parish, Louisiana, as said ward is presently constituted. Said recreation district hereby created shall be and is hereby designated as "Ward 9 Recreation District, Rapides Parish, Louisiana" and, as thus created, shall constitute a corporate body and political subdivision of the State of Louisiana, and as such, shall have the rights, powers and privileges granted and conferred by the Constitution and statutes of the State of Louisiana, including the authority to incur debt, issue bonds and levy taxes.
A special election was held in the Ward 9 Recreation District in the Parish of Rapides on Saturday, November 17, 2001, regarding the following millage proposition:
Summary: 10 year 6 mills property tax for acquiring, constructing, improving, maintaining, and/or operating the recreational facilities of the district, including necessary equipment in connection therewith.
Shall Ward 9 Recreation District, Rapides Parish, Louisiana (the "District"), levy and collect a special tax of six (6) mills on all property subject to taxation in said District, for a period of ten (10) years, beginning with the year 2002 and ending with the year 2011, for the purpose of acquiring, constructing, improving, maintaining and/or operating the recreational facilities of the District, including necessary equipment in connection therewith?
In conjunction with the millage proposition, a general bond obligation was proposed as well. That proposition read as follows:
Summary: Authority to issue $7,000,000 of 20 year general obligation bonds of the district for constructing, purchasing and acquiring lands, buildings, equipment and other facilities to be used in providing recreational facilities for the district, title to which shall be in the public, said bonds to be payable from ad valorem taxes.
Shall Ward 9 Recreation District, Rapides Parish, Louisiana (the "District"), incur debt and issue bonds to the amount of Seven Million Dollars ($7,000,000), to run twenty (20) years from the date thereof, with interest at a rate not exceeding eight percent (8%) per annum, for the purpose of constructing, purchasing and acquiring lands, buildings, equipment and other facilities to be sued in providing recreational facilities for the District, title to which shall be in the public, which bonds will be general obligations of the District and will be payable from ad valorem taxes to be levied and collected in the manner provided by Article VI, Section 33 of the Constitution of the State of Louisiana of 1974, and statutory authority supplemental thereto?
The election resulted in a vote in favor of the Millage Proposition and a vote in favor of the General Obligation Bond Proposition. The Procès Verbal declaring the results of the special election was filed and recorded with the Secretary of State on December 17, 2001.
International Paper paid the aforementioned millage for the 2002 year "under *549 protest," and subsequently filed a "Petition for Refund of Ad Valorem Taxes Paid Under Protest" on January 30, 2003, and an "Amended Petition For Refund of Ad Valorem Taxes Paid Under Protest" on April 17, 2003, in the Ninth Judicial District Court for the Parish of Rapides. In its lawsuit, Plaintiff named as defendants Sheriff William Earl Hilton, in his capacity as ex-officio tax collector in and for Rapides Parish, Louisiana; Ralph Gill, in his capacity as assessor of Rapides Parish, Louisiana; the Ward 9 Recreation District in Rapides Parish, Louisiana; and Richard Ieyoub, in his capacity as Attorney General in and for the State of Louisiana.
Defendants thereafter filed an Exception of Prescription and Peremption on June 17, 2004, arguing that under Article VI, § 35(A) of the Louisiana Constitution of 1974 and La. R.S. 18:1294, Plaintiff's petition was untimely as it was filed beyond the sixty (60) day period following an election within which one may challenge the legality of the election, the bond issue provided for, or the tax authorized. According to Defendants, since the favorable results of the special election held on November 17, 2001, were promulgated by publication on Friday, December 14, 2001, and Plaintiff's petition was not filed until January 30, 2003, more than sixty (60) days following the promulgation of the results of the election, Plaintiff's action is untimely.
Because International Paper paid the tax at issue under protest, it opposed the defendants' Exception of Prescription and Peremption, asserting that the aforementioned sixty (60) day prescriptive period is inapplicable to the instant matter, as International Paper's primary claim is not an election contest, rather "it is that the Ward 9 Recreation District tax is improperly applied to it." Therefore, Plaintiff argued that its Petition for Refund of Ad Valorem Taxes Paid Under Protest, as amended, was timely.
Following a hearing on August 16, 2004, and in a written judgment signed to the same effect, the trial court granted the defendants' Exception of Prescription and Peremption on a limited basis. Specifically, the trial court found that the Exception should be sustained as to the "validity of the election and the bond issue." The issues regarding whether plaintiff should be exempt from the property tax levied by the Ward 9 Recreation District were reserved unto the parties.
On April 21, 2005, Defendants Sheriff William Earl Hilton, Ralph Gill, and the Ward 9 Recreation District filed a Motion for Summary Judgment, asserting that La. R.S. 33:130.15 (repealed 1995), La. R.S. 33:130.16, and La. R.S. 51:1202 evidence the legislature's intent to exclude industrial areas only from any new special service district where such special district would duplicate services the industrial area provides itself. Defendants argued that there is no genuine issue of material fact that the Recreation District was legally formed, and the inclusion of plaintiff's industrial property into the recreational district, and the subsequent taxation by the recreation district of plaintiff's property, is proper.
International Paper filed a cross Motion for Summary Judgment on June 27, 2005, asserting that it is located in an industrial area not susceptible to inclusion by a municipality or district created after the industrial area. Moreover, International Paper argued in its motion that the Resolution of the Rapides Parish Police Jury creating the industrial area contractually prohibits the Recreation District, as a political subdivision of the parish, from imposing the new tax on the Paper Mill located within it. Plaintiff noted in its motion for summary judgment that the *550 First Circuit decided a similar issue in Allied Signal, Inc. v. Jackson, 96-0138 (La.App. 1 Cir. 2/14/97); 691 So.2d 150, wherein the court found that a pre-existing industrial area could not be included in the proposed town of Geismer, which the defendants were attempting to have incorporated. For these reasons, International Paper argued it was entitled to a refund of its payment of the taxes it paid under protest and summary judgment in its favor.
The trial court held a hearing on January 30, 2006, and granted the Motion for Summary Judgment in favor of defendant, Ward 9 Recreation District. The trial court also ordered the tax revenues being held in escrow by the Sheriff of Rapides Parish be released to the Ward 9 Recreation District according to law. The judgment was made final pursuant to Code of Civil Procedure Articles 1841, 1911, and 1918, and a written judgment was signed to this effect on March 14, 2006.
The Plaintiff suspensively appealed to the Court of Appeal, Third Circuit. The Third Circuit affirmed the trial court's ruling that the assessment of the ad valorem taxes against International Paper and in favor of the defendants, Sheriff William Earl Hilton, Ralph Gill, and Richard Ieyoub, was proper. Moreover, the court of appeal reasoned that under Louisiana Civil Code article 13 (pertaining to the rules of statutory interpretation) and this Court's discussion of statutory construction in Pumphrey v. City of New Orleans, 05-979 (La.4/4/06); 925 So.2d 1202, La. R.S. 33:130.16 has been tacitly repealed.
Not only did the court of appeal find that La. R.S. 33:130.16 was tacitly repealed, the court of appeal also narrowed the issue to whether the existence of an industrial area provides a blanket tax exemption due to exclusion from any newly created municipality or whether it is the nature of the services provided by the district that determines exclusion. The court found that the basis of the exclusion relates to the nature of the services, as it was the legislature's intent to exclude industrial areas from being taxed for services they already provide for themselves. Furthermore, the court reasoned that the legislature did not intend to provide a blanket tax exemption for businesses in industrial areas, and therefore, found that the trial court correctly granted summary judgment in favor of the defendants.
Plaintiff International Paper thereafter timely filed the instant application, asserting that not only did the court of appeal err in its interpretation of La. R.S. 33:130.11 et seq. to find that International Paper could be subject to inclusion and taxation by a newly created special service district, but also that it also erred in finding that La. R.S. 33:130.16 had been tacitly repealed. Furthermore, International Paper asserted that the court of appeal's opinion, if allowed to stand, will upset the long-standing "quid pro quo" incentives for industrial companies to provide their own services as enumerated in La. R.S. 51:1202, and thereby not be subject to inclusion or taxation by newly created special service districts. International Paper also asserts that the court of appeal disregarded their "contractual rights" argument, wherein Plaintiff alleged that the Resolution creating the industrial area resulted in a contract between it and the Police Jury. By virtue of that contract, International Paper argues that it assumed the responsibility to provide the basic utility services for which it received the aforementioned exclusion from subsequent "political entities," including new special service districts under La. R.S. 33:130.16. Therefore, International Paper suggests that the court of appeal's finding that the resolution merely conferred the *551 status of the "industrial area" in question, and did not necessarily create a contract, has unconstitutionally violated its contractual rights in derogation of Article I, § 23 of the Louisiana Constitution.
In opposition, Defendants argued that the subject recreation district was validly created pursuant to La. R.S. 33:4562 et seq., and therefore may not now be attacked. Defendants assert that, except for the regulation regarding municipalities and those services already enumerated in La. R.S. 33:130.15 (repealed 1995) and La. R.S. 51:1202, there is no prohibition, statutory or otherwise, that precludes a parish police jury's power to create a recreation district within its borders, including the existence of industrial areas within the parish. Because the statutes at issue are clear and unambiguous, Defendants argue that the legislature has clearly expressed its will regarding the exclusion of industrial areas from certain special service districts. According to Defendants, the court of appeal correctly noted that the purpose of industrial areas is to prevent the duplication of services, and the basis of the exclusion is to prevent double taxation for services that a business in an industrial area already provides for itself. As such, the enumerated services in La. R.S. 33:130.15 (repealed 1995) are those which an industry would normally provide for itself. Because those services are local in nature, other types of services (such as school, law enforcement and recreation) are for the general good and are less likely to be provided by private industry. Thus, those services provided by special districts, such as the instant recreation district, are omitted from the list found in La. R.S. 33:130.15 (repealed 1995).
Defendants also aver that because Plaintiff's property is not of a type listed in Article VII, § 21 of the Louisiana Constitution as being exempt from ad valorem taxation, it is subject to all ad valorem taxes levied by political subdivisions in which the plaintiff's property lies.
Finally, Defendants assert that the court of appeal correctly found that the resolution creating the industrial area is not a contract. Defendants also allege that a resolution of this kind is not interpreted under Louisiana law as customary contract because it conveys the will of only one party (the Rapides Parish Police Jury), and there is no required consideration. Even if the resolution were to qualify as a contract (which it cannot, as a police jury does not have the power to enter into contracts to exempt property from taxation) the resolution does not promise to refrain from creating recreation districts.

DISCUSSION
This Court has recognized the paramount duty of the judicial branch of government to interpret the construction of statutes and their appropriate application. Theriot v. Midland Risk Ins. Co., et al., 95-2895, p. 3 (La.5/20/97); 694 So.2d 184, 186. As such, we have extensively reviewed the relevant statutes and their history in Louisiana law as they relate to the present matter. Based upon our review of the statutes and the legislative intent behind them, not only do we find that La. R.S. 33:130.16 has not been tacitly repealed, we also find that the legislature specifically and clearly enumerated those service districts from which industrial areas were to be excluded, as found in La. R.S. 33:130.15 (repealed 1995) and in R.S. 51:1202. Because recreational services are not mentioned in either statute, the subject recreation district, which provides services not enumerated in La. R.S. 33:130.15 (repealed 1995) or La. R.S. 51:1202, is not a district from which International Paper can be excluded or exempt *552 from imposition of taxation by the recreation district.
History and Creation of Industrial Areas in Louisiana Law
The Louisiana Constitution of 1921 contained Article XIV, § 29.1, entitled "Parish industrial areas," which was added by Acts 1964, No. 557 and adopted November 3, 1964. The text of the original article was as follows:
Section 29.1. The Legislature is authorized to permit all parishes to create industrial areas within their boundaries in accordance with such procedure and subject to such regulations as the Legislature shall decide upon. Parish industrial areas shall not be subdivisions of the state. All industrial areas so created hereafter shall include provisions for access by public road to any and all entrances to the premises of each and every plan in such area which entrances are provided for use by employees of such company, or for use by employees of independent contractors working on such premises, or for delivery of materials or supplies, other than by rail or water transportation to such premises. Where individual plants provide police protection this protection shall be confined to the premises of each individual plant located in the area.[2]
A substantial portion of the foregoing language was carried forward to the Louisiana Constitution of 1974, and thereafter provided for in Article VI, § 18. The text of that article is as follows:
Section 18. (A) Authorization. The legislature by law may authorize parishes to create and define industrial areas within their boundaries in accordance with procedures and subject to regulations which it determines. An industrial area shall not be a political subdivision of the state.
(B) Access by Public Road; Police Protection. When an industrial area is so created, provision shall be made for access by public road to each entrance to the premises of every plant in the area, which is provided for use by employees of the company, or for use by employees of independent contractors working on the premises, or for delivery of materials or supplies, other than by rail or water transportation, to the premises. Police protection provided by any plant in an industrial area shall be confined to the premises of that plant.
In conjunction with the referenced constitutional article, Acts 1964 (enacted the same year Article IVX, § 29.1 was added to the Louisiana Constitution of 1921) also added the provisions in Title 33 of the Louisiana Revised Statutes, pertaining to "Industrial Areas."[3] The relevant subpart of Title 33 begins with La. R.S. 33:130.11, entitled "Designation of industrial areas; feasibility; assistance by state agencies," which provides as follows:
Subject to the written approval of fifty-one percent in interest of the landowners of the proposed industrial area, parish governing authorities may establish *553 industrial areas composed of territory wholly within the parish boundaries and without the boundaries of any municipality. Such areas may be designated only after the feasibility therefor has been established by land use studies conducted by parish planning commissions, parish development boards or other similar recognized authorities. Cooperation and assistance in the preparation and evaluation of such studies may be rendered by state agencies equipped to conduct such studies when requested to do so by any parish governing authority provided that where municipal boundaries are co-extensive with parish boundaries, the municipal governing authorities may establish industrial areas within the municipal boundaries.
La. R.S. 33:130.11.
A review of the original Senate Bill 220, which introduced La. R.S. 33:130.11 et seq., identifies Senate Bill 220 as an act:
To amend Part IV of Chapter 1 of Title 33 of the Louisiana Revised Statutes of 1950 by adding thereto a new sub-part to be designated as sub-part B-1 to provide for the designation and regulation of industrial areas by parish governing authorities and to exempt those industries contained within the area from certain forms of parish taxation.
Official Journal of the Proceedings of the Senate of the State of Louisiana, Eighth Day's Proceedings 82, Reg. Sess.1964, May 11, 1964 (emphasis added).
In furthering the purposes of the Act, those "certain" forms of taxation were originally set forth in La. R.S. 33:130.15 (repealed 1995), which, as will be shown below, enumerates those services from which industry would be exempt from inclusion and taxation: construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. (See, La. R.S. 33:130.15, repealed 1995). Significantly, the statutory language does not include recreational services.
In La. R.S. 33:130.12, the legislature set forth that which may be included in an industrial area when it is created, subject to the limitation set forth in La. R.S. 33:130.11, which prohibits including the industrial area in the boundary of any municipality.[4]
La. R.S. 33:130.13 pertains to the procedure for designating an industrial area, which requires holding not less than one public hearing regarding the designation. As occurred in the instant matter, and discussed below, "the designation of an industrial area or any change of the boundaries of an existing one shall be by resolution of the parish governing authority." (Emphasis added). The following section, La. R.S. 33:130.14, sets forth the "legal status of industrial areas":
Whenever a parish governing authority has designated an industrial area or has made a change of the boundaries of an existing one and has filed certified copies thereof as provided in R.S. 33:130.13, no facilities shall be thereafter located therein that are not industrial in character or reasonably related thereto; provided, however, no construction or installation permits shall be required but the parish governing authority may resort to judicial process to enforce such industrial requirements.
La. R.S. 33:130.14.
Most importantly for purposes of the instant matter are La. R.S. 33:130.15 (repealed *554 1995), La. R.S. 33:130.16, and those provisions contained within Chapter 8 ("Industrial Development Generally") of Title 51 ("Trade and Commerce") of the Louisiana Revised Statutes.[5] As mentioned previously, La. R.S. 33:130.15 was repealed by Acts 1995, No. 194, § 2, and its subject matter replaced in La. R.S. 51:1202 (discussed infra). Because La. R.S. 33:130.15 (repealed 1995) was in effect at the time this particular industrial area was created, it is important to note the text of the original statute:
Those industries located within the boundaries of any industrial area shall furnish and maintain individually or as a group the following services usually provided by parish or local governments: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. Any industrial area which furnishes and maintains all of the above enumerated services shall not be subject to annexation. Any industrial area heretofore designated which complies with the provisions hereof shall be considered validly designated hereunder and any agreement or resolution with respect thereto shall be considered to include all services herein enumerated though not specifically included therein. Agreements between the industries located within the boundaries of an industrial area and the governing authority of the parish and/or municipality or municipalities situated therein may be made for mutual fire protection in grave emergencies.
All industrial areas so created shall include provision for access by public road to any and all entrances to the premises of each and every plant in such area which entrances are provided for use by employees of such company, or for use by employees of independent contractors working on such premises, or for delivery of materials or supplies, other than by rail or water transportation, to such premises.
La. R.S. 33:130.15 (repealed 1995).
La. R.S. 33:130.16, which the court of appeal in the instant matter found "tacitly repealed," is entitled "Inclusion of industrial area within certain newly created special service districts prohibited." It was also added by Acts 1964, No. 406. The text of La. R.S. 33:130.16, addressed below, provides that "[n]o portion of an industrial area may be included within any newly created special service district furnishing any of the services enumerated in R.S. 33:130.15."
Lastly, La. R.S. 33:130.17 sets forth the requirements and procedures for abolishment of an industrial area or a portion thereof, which require a resolution similar to that required for the creation of an industrial area in La. R.S. 33:130.13. The final sections of R.S. 33:130 are La. R.S. 33:130.18 and La. R.S. 33:130.19, which pertain to prohibitions and exceptions against increases in taxation and industrial areas specifically in Calcasieu Parish, respectively. These sections are not applicable to the instant matter.
La. R.S. 51:1202, added by Acts 1995, No. 194, § 1, is the re-enactment of La. R.S. 33:130.15 (repealed 1995), supra, which sets forth language virtually identical to that of La. R.S. 33:130.15, except for *555 the addition of "or incorporation" following the word "annexation."[6] La. R.S. 51:1203 dictates that "[n]o portion of an industrial area that provides any of the services enumerated in R.S. 51:1202 shall be included within any newly created municipality."
La. R.S. 33:130.16: "Inclusion of industrial area within certain newly created special service districts prohibited"
The court of appeal, relying on Pumphrey v. City of New Orleans, 05-979 (La.4/4/06);14 925 So.2d 1202, found that La. R.S. 33:130.16 was tacitly repealed by La. R.S. 51:1203.[7] In Pumphrey, this Court stated that "[u]nder general rules of statutory construction, the latest expression of the legislative will is considered controlling and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause." Id. at 13; 925 So.2d at 1211 (citing La. Civ.Code art. 8 (2004); State v. Bd. of Comm'rs of Caddo Levee Dist., 188 La. 1, 175 So. 678, 681 (1937)). However, the court of appeal's reliance upon Pumphrey is misplaced. Louisiana law and jurisprudence demonstrate that a newly passed legislative act that is repugnant to or in conflict with an earlier passed act will supersede and implicitly repeal the earlier act, even in the absence of a repealing clause. However, not all conflicts lead to tacit repeal; only those conflicts which are irreconcilable may lead to tacit repeal. Fakier v. Picou, 246 La. 639, 166 So.2d 257, 258 (1964) (emphasis added) (quoting State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601, 626 (1937) ("[N]othing short of irreconcilable conflict between two statutes works a repeal by implication")); State ex rel. Grosch v. Echezabal, 220 La. 1101, 58 So.2d 398 (1952).
It is well settled that repeals by implication are not favored and will only be permitted where two acts are irreconcilably inconsistent or repugnant. Liter v. City of Baton Rouge, 258 La. 175, 245 So.2d 398, 402 (1971) (emphasis added); State v. Standard Oil, 178 So. at 626. Thus, the repeal of a statute by implication "will not be indulged if there is any other reasonable construction." Id. (citations omitted).
In the instant matter, La. R.S. 33:130.16 and La. R.S. 51:1203 are not in conflict such that they are irreconcilable. To the contrary, by utilizing the plain *556 meaning of the statute, as required by Louisiana Civil Code article 9,[8] La. R.S. 33:130.16 provides that if a newly created special service district provides those services enumerated in La. R.S. 33:130.15 (repealed 1995), it is prohibited from including a pre-existing industrial area (that also statutorily provides those services). As the statute is written, the legislature has set forth which districts are prohibited from including an industrial area by virtue of the statutory language which qualifies the newly created special service district as any district that furnishes "any of the services enumerated in R.S. 33:130.15." La. R.S. 33:130.16.
Similarly, La. R.S. 51:1203 prohibits inclusion of an industrial area, but prohibits that inclusion into any newly created municipality.[9] This Court has held that "municipal corporations are subordinate branches of state government established by the legislature for the purpose of administering local affairs of government, and as such, possess only such powers as are conferred upon or delegated to them by the state." Louisiana Associated Gen. Contractors, Inc., et al., v. The Calcasieu Parish Sch. Bd., 586 So.2d 1354, 1367 (La. 1991), reh'g denied, 9/5/91 (citing Bradford v. City of Shreveport, 305 So.2d 487 (La. 1974), abrogated on other grounds by Fishbein v. State ex. rel. Louisiana Univ. Health Scis. Center, 04-2482 (La.4/12/05); 898 So.2d 1260); Simmons v. City of Shreveport, 221 La. 902, 60 So.2d 867 (1952); State v. Jordon, 207 La. 78, 20 So.2d 543 (1944).
Conversely, special service districts, created under Louisiana Constitution Article VI, § 19, may be granted certain powers by the legislature,[10] and those powers occasionally may overlap with the functions and borders of counties, cities, and occasionally, states,[11] but no such grant of extended powers that could be considered "municipal" in nature was given to the instant recreation district. In fact, this Court has held that Louisiana Constitution Article VI, § 19, "is in keeping with the national trend recognizing that a special district is a public agency created or authorized by the legislature to aid the state in, or to take charge of, some public or state work, other than community government, for the general welfare." Bd. of Dirs. of the Louisiana Recovery Dist. v. All Taxpayers, Prop. Owners, & Citizens of the State of Louisiana, 529 So.2d 384, 389 (La.1988), reh'g denied, 6/27/88 (citing E. McQuillan, Municipal Corporations, *557 § 2.13, at 170 (3d Ed.1987); 1 C. Sands & M. Libonati, Local Government Law § 2.18, at 2-44 (1981)).
Because La. R.S. 33:130.16 and La. R.S. 51:1203 address the same subject matter directed at preserving an industrial area's right to be excluded from certain areas, but in fact dictate exclusions from two distinct areas, under the well-established rules of statutory construction, the statutes can be harmonized and are not in conflict with each other. Thus, in the absence of an express intent by the legislature to repeal La. R.S. 33:130.16, it is not tacitly repealed.
Statutory Interpretation of Louisiana Revised Statutes, Titles 33 and 51
As it relates to Title 33 and Title 51, plaintiff International Paper asserts that the services to be provided by industries located in industrial areas which were originally enumerated in La. R.S. 33:130.15 (repealed 1995) and then re-located to La. R.S. 51:1202 specifically refer to services provided by industrial areas in La. R.S. 51:1202 ("those industries . . . shall provide . . . the following services"). Thus, Plaintiff avers that, by analogy and a reading of the statutes in pari materia, the "services" referred to in La. R.S. 33:130.16 should be read to modify "industrial areas" and not "special service districts." Utilizing that interpretation, Plaintiff avers that La. R.S. 33:130.16 provides that no industrial district providing the services enumerated in La. R.S. 33:130.15 (repealed, and now located in La. R.S. 51:1202) can be included in any newly created special service district. Moreover, International Paper asserts that the legislature, through the 1995 Acts that created La. R.S. 51:1202 and 1203, "confirmed that the legislature's primary purpose in authorizing industrial areas was the continued provision of exclusivity as protection from targeted taxation." Finally, based upon the court of appeal's affirmation of "targeted taxation" such as this, plaintiff avers that Louisiana's economic development "credibility" will be destroyed.[12]
Conversely, Defendants assert that the recreation district was legally created and may not now be attacked.[13] Moreover, *558 defendants assert that La. R.S. 33:130.15 (repealed 1995) made no mention of recreation or other types of special service districts, and the legislature clearly intended that recreation and other types of special services were to be omitted from the industrial area exclusion. Defendants argue that industrial areas were designed to preclude duplication of services, and therefore, avoid double taxation for services a business in an industrial area already provides for itself. Furthermore, defendants aver that the services set out in La. R.S. 33:130.15 (repealed 1995) are local in nature, and pertain more directly to the property served, while other types of services are for the general good and are generally not provided by private industry. Services not enumerated in the statute, such as recreation services provided by Defendant, are omitted from the list found in La. R.S. 33:130.15 (repealed 1995) and, therefore, are not services of districts required to be excluded by La. R.S. 33:130.16.
First and foremost, this Court adheres to the established principles of statutory construction, which begin with the language of the statute itself. Theriot v. Midland Risk Ins. Co., et al., 95-2895, p. 3 (La.5/20/97); 694 So.2d 184, 186 (citing Touchard v. Williams, 617 So.2d 885, 888 (La.1993), superseded on other grounds by statute in Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism, 02-0563 (La.10/15/02); 828 So.2d 530). Moreover, this Court "has long held that the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law." Id. at 4; 694 So.2d at 186 (citing Garrett v. Seventh Ward Gen. Hosp., 95-0017, p. 9 (La.9/22/05); 660 So.2d 841, 846, overruled on other grounds by Al Johnson Const. Co. v. Pitre, 98-2564 (La.5/18/99); 734 So.2d 623, reh'g denied, 6/25/99; Touchard, 617 So.2d at 888). "Laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject." Id. (citing City of New Orleans v. Bd. of Supervisors, 216 La. 116, 43 So.2d 237 (1949)).
In accordance with the rules of proper statutory construction, including ascertaining the legislature's intent, we note the previously cited introduction to Acts 1964, No. 406 (Senate Bill 220, which enacted Title 33): to "exempt" the industrial areas from "certain forms of parish taxation." (Emphasis added). More importantly, because Acts 1964, No. 406 specifically enacted the sections concerning the creation of and privileges afforded to industrial areas contained within La. R.S. 33:130.11 et seq., those "certain" forms of parish taxation are for those specified services that were enumerated in La. R.S. 33:130.15 (repealed 1995) and later re-enacted in R.S. 51:1202. Recreational services are not enumerated. In this instance, the legislature was not willing to preclude any other form of subsequent inclusion and taxation by special districts against an industrial area, other than those listed in the statute. Had the legislature meant to include special districts providing other services, it certainly could have done so.
Regarding the legislature's exclusion of special districts other than those enumerated in the statute, this Court also must apply the settled doctrine of statutory construction, Expressio Unius est Exclusio Alterius, which dictates that "when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily *559 been included in the statute, is deemed intentional." Filson v. Windsor Court Hotel, 04-2893, p. 6 (La.6/29/05); 907 So.2d 723, 728 (citing State Through Dep't of Public Safety & Corrs., Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Comm'n & Horseshoe Entm't, 94-1872, p. 17 (La.5/22/95); 655 So.2d 292, 302 (citing State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656 (1936); Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325 (1943); Sutherland, Statutory Construction, § 47.23 (5th Ed.1992); Earl T. Crawford, The Construction of Statutes, § 195, at 334 (1940))). Simply stated, the legislature's omission of special service districts other than those enumerated in La. R.S. 33:130.15 (repealed 1995) and La. R.S. 51:1202 is significant in light of this analysis. Recreational districts are not considered the type of district from which industrial areas are to be excluded, as they do not provide the services that industrial areas statutorily provide for themselves.
Because the original intention of the relevant statutes was to prevent duplication of such local services by both the parish and the industry and exemption from certain inclusion and taxation, the rules of interpretation require this Court to apply the plain meaning of the statutes (in particular, La. R.S. 33:130.16): if a newly created special service district provides any of the services enumerated in La. R.S. 33:130.15 (repealed 1995, now R.S. 51:1202), it cannot include an industrial area providing those same services. In the instant case, Ward 9 Recreation District does not provide construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, or garbage and refuse collection and disposal. Thus, because Ward 9 Recreation District does not provide any of the services enumerated, International Paper may be included in and taxed by Ward 9 Recreation District.
Similarly, La. R.S. 51:1203 prohibits inclusion of an industrial area within newly created municipalities (emphasis added). Neither La. R.S. 33:130.15 (repealed 1995, now La. R.S. 51:1202) nor La. R.S. 51:1203 identifies recreation districts (or recreational services) as an enumerated, and therefore excluded, service district.
The Resolution Creating the Industrial Area
Lastly, because we find that the statutory interpretation of the relevant statutes does not prohibit the inclusion and subsequent taxation of International Paper in Ward 9 Recreation District, we must now address International Paper's assertion that the Resolution dated September 27, 1973, which created International Paper as an industrial area, is a contract. Specifically, International Paper argues in its brief that "the industrial area was not only a creature of the parish ordinance but of its own contribution of services" and that "the agreement from which it resulted constituted a contract between it and the Police Jury." Thus, according to International Paper, the subsequent imposition of any tax on the industrial area by a special service district would result in an unconstitutional impairment of this contract in violation of Article I, § 23 of the Louisiana Constitution. Article I, § 23 provides that: "[n]o bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted."
Defendants, on the other hand, assert that this type of resolution is not interpreted as a contract under Louisiana law or customary practice because it conveys the will of only one party (the Rapides Parish Police Jury), and contains no required consideration. Defendants also argue that while a police jury does have the power to enter into employment contracts and *560 award franchises, it does not have the power to enter into contracts exempting certain property from taxation. Thus, the reference in the Resolution that the industrial area "is hereby designated and established as an Industrial Area under the terms and conditions of and with all the privileges, immunities, and responsibilities granted by Act. No. 406 of the 1964 Regular Session of the Louisiana Legislature (now R.S. 33:130.11, et seq.)" conveys no more rights than if the citation had not appeared; it merely directs the reader to the statutes.
We find plaintiff's argument without merit. The Resolution provides that the Rapides Police Jury complied with the requirement to hold at least one public hearing under La. R.S. 33:130.13, noted the accurate legal description of the land owned by the joint petitioners seeking to have the land designated as an industrial area, and therefore established it "as an Industrial Area under the terms and conditions of and with all the privileges, immunities and responsibilities granted by Act. No. 406 of the 1964 Regular Session of the Louisiana Legislature (now R.S. 33:130.11, et seq.)." The language of the Resolution evidences the Rapides Area Planning Commission and the Rapides Parish Police Jury's compliance with the requirements of the statutes for creation and designation of an industrial area, and directs the reader to those statutes. Whether the subject Resolution is a contract is of no moment for purposes of the present analysis, as we have found that the statutes to which the Resolution refers dictate that industrial areas are to be excluded only from those service districts that provide the services enumerated in La. R.S. 33:130.15 (repealed 1995) and La. R.S. 51:1202. Finally, we note that although Plaintiff cites in its brief several cases which it argues support the notion that this particular Resolution should be interpreted as a contract, each case is highly distinguishable on its face and is therefore unpersuasive.
We are mindful of International Paper's "quid pro quo" argument that it has historically been excluded from new special districts by virtue of its providing the enumerated services in La. R.S. 33:130.15 (repealed 1995) and La. R.S. 51:1202. It is important, however, to emphasize that industrial areas shall maintain their exclusion from special service districts which provide those services enumerated in La. R.S. 51:1202 (formerly La. R.S. 33:130.15), as well as exclusion from any newly created municipality, as set forth in La. R.S. 51:1203. This decision does not deprive industrial areas of that very specific exclusivity they have long been statutorily provided. However, if International Paper is of the opinion that allowing the instant inclusion of it into a newly created recreation district will create disincentives for industry in Louisiana and contribute to "targeted taxation," the power to correct such an alleged injustice does not lie with this Court. Any remedy that could be afforded in this instance must come from the legislature.

DECREE
For all of the above reasons, we find that the proper statutory interpretation stemming from an examination of the history and purpose of Article VI, § 18 of the Louisiana Constitution and Titles 33 and 51 of the Louisiana Revised Statutes establishes that La. R.S. 33:130.16 has not been tacitly repealed. Accordingly, that portion of the court of appeal's decision is in error. However, we also find that, based upon the well-founded rules of statutory interpretation as applied to La. R.S. 33:130.11 et seq., and La. R.S. 51:1202 and 51:1203, industrial areas are to be excluded *561 from inclusion and taxation only from those special districts providing services specifically enumerated in La. R.S. 51:1202 (formerly La. R.S. 33:130.15, repealed 1995). Because recreational services are not listed in the statutes, we find that Ward 9 Recreation District is not prohibited from including International Paper in its recreation district, nor is it precluded from levying the instant tax against Industrial Paper. Accordingly, we hold that the court of appeal correctly found that in this instance, the inclusion of International Paper's industrial area and subsequent taxation of International Paper by Ward 9 Recreation District is proper.
AFFIRMED.
NOTES
[*] Retired Judge Moon Landrieu, assigned as Associate Justice Ad Hoc., sitting for Associate Justice Jeannette T. Knoll, recused.
[1] La. R.S. 33:130.15, enacted by Acts 1964, No. 406, § 1, was repealed by Acts 1995, and re-enacted in La. R.S. 51:1202.
[2] The purpose of Senate Bill No. 219 (introduced by Messrs. Clemons and Knowles), which proposed Constitutional Article XIV, § 29.1, was to add "a new Section thereto to be designated as Section 29.1 thereof, to authorize the Legislature to permit all parishes to create industrial areas within their boundaries; to provide a procedure therefor; and to pass legislation in connection therewith." Official Journal of the Proceedings of the Senate of the State of Louisiana, Eighth Day's Proceedings 82, Reg. Sess.1964, May 26, 1964.
[3] The provisions are located within Title 33, "Municipalities and Parishes," Chapter 1, Part IV, "Physical Development of Parishes and Municipalities," Subpart B-1, "Industrial Areas," sections 130.11 through 130.19.
[4] The text of La. R.S. 33:130.12 provides: "[s]ubject to the limitation contained in R.S. 33:130.11, an industrial area may include any compact body of land which is used exclusively for industrial purposes or which is primarily suited for industrial development."
[5] Chapter 8, Title 51 includes the more recent provisions regarding industrial development, although the first section (La. R.S. 51:1201) which sets forth an allowance for parishes, municipalities and port authorities to "promote the development of industry, trade, and commerce within and for their respective jurisdictions . . ." was added by Acts 1963, No. 118, § 1, amended by Acts 1989, No. 828, § 1, and amended by Acts 1995, No. 347, § 1.
[6] The text of La. R.S. 51:1202 is as follows, in pertinent part:

A. Those industries located within the boundaries of any industrial area established pursuant to Subpart B-1 of Part IV of Chapter 1 of Title 33 of the Louisiana Revised Statutes of 1950 shall furnish and maintain individually or as a group the following services usually provided by parish or local governments: the construction and cleaning of streets, street lighting, sewers and sewerage works, water service, fire protection, and garbage and refuse collection and disposal. Any industrial area which furnishes and maintains all of the above enumerated services shall not be subject to annexation or incorporation. Any industrial area heretofore designated which complies with the provisions hereof shall be considered validly designated hereunder and any agreement or resolution with respect thereto shall be considered to include all services herein enumerated though not specifically included therein. Agreements between the industries located within the boundaries of an industrial area and the governing authority of the parish and/or any municipality or municipalities situated therein may be made for mutual fire protection in grave emergencies.
[7] On page 5 of the court of appeal's opinion, the court incorrectly states that "La. R.S. 33:130.15 has been tacitly repealed and replaced by La. R.S. 51:1203." In fact, La. R.S. 33:130.15 has been expressly repealed (see note 1 of this opinion). The court of appeal later correctly refers to La. R.S. 33:130.16 as the statute which it found tacitly repealed.
[8] Louisiana Civil Code article 9 provides: "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
[9] La. R.S. 33:341 provides that "municipal corporations shall be divided into three classes: cities, towns, and villages. Those having five thousand inhabitants or more are cities; those having less than five thousand but more than one thousand inhabitants are towns; and those having one thousand or fewer inhabitants are villages." The powers conferred upon municipalities are set forth in La. R.S. 33:361.
[10] Article VI, § 19 provides as follows:

Section 19. Subject to and not inconsistent with this constitution, the legislature by general law or by local or special law may create or authorize the creation of special districts, boards, agencies, commissions, and authorities of every type, define their powers, and grant to the special districts, boards, agencies, commissions, and authorities so created such rights, powers, and authorities as it deems proper, including, but not limited to, the power of taxation and the power to incur debt and issue bonds.
[11] Bd. of Dirs. of the Louisiana Recovery Dist. v. All Taxpayers, Prop. Owners, & Citizens of the State of Louisiana, 529 So.2d 384 (La. 1988), reh'g denied, 6/27/88.
[12] International Paper heavily relies upon International Paper Company v. Sheriff William Earl Hilton, et al., 96-212 (La.App. 3rd Cir.12/11/96); 685 So.2d 567 ("IP One"), wherein the Third Circuit reversed summary judgment in favor of International Paper, finding that material issues of fact remained regarding whether the Police Jury intended to create a new district providing new services or reorganize an existing fire protection district with existing services. We do not find Plaintiff's reliance upon this case persuasive because IP One is factually distinguishable. IP One addressed the plaintiff's prohibited inclusion into a fire and water district (the trial court in IP One had denied International Paper's Motion for Summary Judgment on its claim for taxes paid under protest which were levied by the Kolin-Ruby Wise Waterworks District, but that issue was not before the court of appeal in IP One), and as noted above, fire and water are both enumerated services in La. R.S. 33:130.15 (repealed 1995) and La R.S. 51:1202.
[13] La. R.S. 33:4562 provides for the creation of recreation districts by parishes by the police jury of any parish in the state, and such recreation district shall have the several powers granted to it through statutes. La. R.S. 33:4566 provides as follows:

The recreation districts created under the provisions of R.S. 33:4562 are declared to be political subdivisions of the state, and for the purpose of purchasing and acquiring lands, buildings, equipment, and other facilities, and for the construction and maintenance thereof are authorized to vote and levy special maintenance taxes and issue bonds when authorized to do so by a vote of the qualified electors of the district and as authorized by the Constitution and laws of the state of Louisiana. Any election authorized under this Section shall be called by the board of commissioners of the district, and in the same election to issue bonds the board may also submit to the qualified electors of the district a proposition to levy a special tax not to exceed fifteen mills on the dollar for a period not to exceed ten years for the purpose of maintaining and operating said district.