Dear Mr. Moore:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. Your request pertains to the use of ad valorem tax proceeds.
You indicated the following to us:
 On November 17, 2001, a special election was held in the Ward 9 Recreation District in the Parish of Rapides, in which the following millage proposition was approved:
 Summary: 10 year 6 mills property tax for acquiring, constructing, improving, maintaining, and/or operating the recreational facilities of the district, including necessary equipment in connection therewith.
 Shall Ward 9 Recreation District, Rapides Parish, Louisiana (the "District"), levy and collect a special tax of six (6) mills on all property subject to taxation in said District, for a period of ten (10) years, beginning with the year 2002 and ending with the year 2011, for the purpose of acquiring, constructing, improving, maintaining and/or operating the recreational facilities of the District, including necessary equipment in connection therewith?
 In conjunction with the millage proposition, a general bond obligation was proposed as well. That proposition read as follows:
 Summary: Authority to issue $7,000,000 of 20 year general obligation bonds of the district for constructing, purchasing and acquiring lands, buildings, equipment and other facilities to be used *Page 2 
in providing recreational facilities for the district, title to which shall be in the public, said bonds to be payable from ad valorem taxes.
 Shall Ward 9 Recreation District, Rapides Parish, Louisiana (the "District"), incur debt and issue bonds to the amount of Seven Million Dollars ($7,000,000), to run twenty (20) years from the date thereof, with interest at a rate not exceeding eight percent (8%) per annum, for the purpose of constructing, purchasing and acquiring lands, buildings, equipment and other facilities to be used in providing recreational facilities for the District, title to which shall be in the public, which bonds will be general obligations of the District and will be payable from ad valorem taxes to be levied and collected in the manner provided by Article VI, Section 33 of the Constitution of the State of Louisiana of 1974, and statutory authority supplemental thereto?
 The election resulted in a vote in favor of the Millage Proposition and a vote in favor of the General Obligation Bond Proposition. The Proces Verbal
declaring the results of the special election was filed and recorded with the Secretary of State on December 17, 2001.
 Immediately after the election, there was a protest by International Paper Company, Inc. ("International Paper"), which challenged the imposition of both taxes upon its property. In Int'l Paper Co. v. Hilton, 966 So. 2d 545 (La. 2007), the Louisiana Supreme Court ruled against International Paper. Thus, beginning in 2007, the taxes are no longer being paid under protest by International Paper.
 During the pendency of the litigation, International Paper made total tax payments of $1,039,935. The accrued interest on that amount is approximately $104,452.
 Also, unrelated to the International Paper matter, between 2002 and 2007, the District accumulated approximately $459,663 of surplus funds in the bond debt service account for the general obligation bonds.
 Additionally, due to a strong economy in the area as well as the increased property values provided by a 2004 property value reassessment by the Rapides Parish Tax Assessor, the District's CPA now projects that, under the current assessment, the District will actually be able to pay off the general obligation bond debt early, by at least 2018. Furthermore, the assessor has scheduled another round of property reassessments for 2008, and the District anticipates that the increase property values may *Page 3 
actually allow it to pay off the general obligation bond debt as early as 2016 or 2017.
You ask whether it would be appropriate for the District to do the following:
 1. Utilize the approximately $1,039,935 of taxes previously paid under protest by International Paper to construct a baseball park for wheelchair bound and handicapped children; and
 2. To use any remaining funds to pay down the principal on the general obligation bonds; and
 3. To take the approximately $104,452 in accrued interest earned on the taxes previously paid under protest by International Paper plus the approximately $459,663 received from the tax in excess of the amounts required for the annual bond payments from 2002-2007 and use those funds to pay down the principal on the general obligation bonds; and
 4. To annually use all general obligation bond tax proceeds that are in excess of the amount necessary for the annual bond payment to pay down the principal on the bonds until paid in full.
Significantly, there are two separate and distinct ad valorem taxes that were paid under protest by International Paper, the tax levied pursuant to the Millage Proposition and the tax levied pursuant to the General Obligation Bond Proposition. For ease of reference, these taxes are referred to hereinbelow as the "operation and maintenance tax" and the "general bond obligation tax", respectively.
Since the Louisiana Supreme Court has determined that the District is entitled to operation and maintenance as well as general bond obligation taxes previously paid under protest by International Paper, the use of both of those taxes is determined the same as if they were never paid under protest.
With regard to the operation and maintenance tax, La.R.S. 39:704
indicates that the proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied. Additionally, the jurisprudence of this state provides that special tax authorizations must be strictly construed. Police Juryof the Parish of Acadia v. All Taxpayers, et al., 95-145 (La.App. 3rd
Cir. 3/29/95), 653 So.2d 94, rehearing denied; Hemler v. Richland ParishSchool Board, 76 So. 585 (La. 1917); Watkins v. Ouachita Parish SchoolBoard, 136 So. 591 (La. 1931); Hodnett v. Monroe City School Board,277 So.2d 598 (La.App. 2nd Cir. 1972) and Brock v. St. James ParishCouncil, 407 So.2d 1265 (La.App. 4th Cir. 1981), writ denied.
Also, this office has previously opined that the proceeds of an ad valorem tax must be used in the manner set forth in the proposition approved by the electorate. La.R.S. *Page 4 39:704; La.R.S. 33:2714; La.R.S. 33:2723. In accord: Atty. Gen. Op. Nos. 04-0267, 03-0157, 01-269, 98-421, 98-287, 96-246, 95-145, 94-540, 94-346, 93-424, 93-47 and 92-50.
The Millage Proposition states that the operation and maintenance tax proceeds must be used "for the purpose of acquiring, constructing, improving, maintaining and/or operating the recreational facilities of the District, including necessary equipment in connection therewith." As such, the proceeds of that tax may be used for any of those stated purposes. Clearly, a baseball park is a recreational facility. Thus, the District's proposed use of the portion of the taxes previously paid under protest by International Paper that is attributable to the operation and maintenance tax as well as any interest associated therewith to construct a baseball park for wheelchair bound and handicapped children appears to be consistent with the purposes set forth in the proposition. The undersigned could find no authority that would allow interest attributable to the operation and maintenance tax to be used to pay down principal on the general obligation bonds.
With regard to the portion of the taxes previously paid under protest by International Paper that is attributable to the general bond obligation tax as well as any interest associated therewith, as we indicated in Atty. Gen. Op. No. 88-281, prior to the retirement of general obligation bonds, all revenues of an ad valorem tax levied to pay debt service on the bonds must remain in the debt service fund or otherwise be applied solely to pay principal and/or interest of the bonds.
Finally, we note that the District's proposed annual use of all general obligation bond tax proceeds that are in excess of the amount necessary for the annual bond payment to pay down the principal on the bonds until paid in full appears to be permissible and consistent with Atty. Gen. Op. No. 88-281, mentioned hereinabove.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 By: __________________________
 BENJAMIN A. HUXEN II
 Assistant Attorney General
 JDC/BAHII:crt