MICHAEL E. KIRBY, Judge.

STATEMENT OF THE CASE:

On February 14, 2002 the State of Louisiana filed the following petition in the *1218 Twenty Fifth Judicial District Court, to wit:
STATE OF LOUISIANA
IN THE INTEREST OF D.M.[1]
(DOB 7/9/86)
P-E-T-I-T-I-O-N
DELINQUENCY
L.R.S.:14:34.1
L.R.S.: 14:67
L.R.S.:14:110
L.R.S.: 40:966
[[Image here]]
I.
[[Image here]]
Said minor child is within the jurisdiction of this Honorable Court, in that D.M. is being charged with being a juvenile delinquent on or about January 14, 29, and 30, 2002
Count I
On January 29, 2002, at approximately 6:45 p.m. Committed a battery without the consent of the victim when the offender has reasonable grounds to believe Lthe victim is a police officer acting in the performance of his duty.
Count II
On or between January 29th and 30th, between 6:45 p.m. and 8:59 a.m. Committed theft of a green and white, 21 ft. Skeeter Bay Pro boat valued above $500.00.
Count III
On January 29, 2002, at approximately 6:50 p.m. did commit aggravated escape by intentionally departing from a law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.
Count IV
On January 14, 2002, at approximately 12:30 p.m., did knowing [sic] and intentionally possess a Schedule I controlled dangerous substance to-wit marijuana.
* * *
WHEREFORE, the premises considered, petitioner prays that formal jurisdiction be taken by this Honorable Court and that the Court render such judgments and orders as the Court may deem just, proper and necessary for the safety and protection of the said child.
[[Image here]]
D.M. denied the allegations of the petition on February 28, 2002 and was granted time to file special pleadings. On March 25, 2002, he filed a motion for the appointment of a sanity commission. According to the minutes of court, after several continuances that motion was disposed of on May 30, 2002 with a stipulation between the state and the juvenile that the members of the commission, in lieu of live testimony, would submit a written report to the effect that the juvenile “is competent and able to stand trial.” The minute entry for May 30, 2002 indicates the juvenile again denied the allegations of the petition and was granted |3an additional fifteen days to file motions and given another date for a motion hearing and a trial date was fixed.
*1219 An adjudication hearing was held August 29, 2002, following which the Court ruled:
THE COURT:
Alright. The evidence establishes in this matter that in regards to count 1 of the Bill of Information [sic] charging Second Degree Battery.
[[Image here]]
The Court finds that at the very least this juvenile was a principle [sic] to the commission of second degree battery and adjudicates him a delinquent in respect to that charge.
On the second count the court adjudicated D.M. a delinquent on the lesser offense of unauthorized use of movables having a value of $1,000.00 or less. As to count three the court found D.M. delinquent for the commission of aggravated escape. The court found no evidence as to distribution of marijuana as alleged in count four and the state immediately announced it would dismiss that matter.
A disposition hearing was held on October 17, 2002 at which D.M. was sentenced to five years in the custody of the Department of Public Safety and Corrections on counts one and three. On count two, the sentence was six months in the Department of Public Safety and Corrections. All sentences were made to run concurrently with each other and he was given credit for the time served.

STATEMENT OF THE FACTS:

D.M. is an adolescent male who was originally arrested for a small amount of marijuana (seeds and stems). While confined in the Plaquemines Parish 14 Juvenile Detention Center, he and another juvenile, L. B., escaped. D.M. was scheduled for a detention hearing the following day.
In June of 1999, D.M. had suffered a life threatening and severe head injury from a motorcycle accident while not wearing a helmet. He was hospitalized for several months due to the motorcycle accident and had to undergo intense speech and physical therapy.
On the day of the escape, January 29, 2002, seventy-five year old Donald Shack-elford was working as a guard in the Plaquemines Parish Juvenile Detention Center. Deputy Shackelford saw D.M. and L.B. in the day room as he walked past them on his way to the laundry room. While his back was turned, he was attacked from behind by the two juveniles. They slammed his head down on the table and knocked him out. Deputy Shackelford had his hearing aid pushed up in his ear and sustained a jaw injury and a knee injury that required surgery. At the time of trial he was still receiving treatment for injuries to the nerves in his leg. When the deputy regained consciousness L.B. was on Deputy Shackelford’s back with his arm around the deputy’s neck and bending the deputy’s leg against his back. At trial the deputy stated he saw D.M. take the master key out of the deputy’s pocket and the deputy stated he passed out again. Subsequently, the two juveniles utilized the keys to get out of the facility to an outside yard, where they completed their escape by crawling under a fence.
While attempting to swim across a nearby canal, L.B. drowned. D.M. managed to swim across the canal and used a boat he came across to flee the area. | sFirst, he went to an oil rig in Lake Washington, where he obtained warmer clothing and then proceeded to Grand Isle where he called his grandmother for advice before turning himself in to the Grand Isle Police Department.

ASSIGNMENTS OF ERROR:

On appeal D.M. asserts two errors: 1) The adjudication of delinquency on Second Degree Battery and Aggravated Escape *1220 was contrary to the law and the evidence; and 2) The sentences were excessive.

ERROR PATENT:

We note an error patent on the face of the record. D.M. was adjudicated guilty of second degree battery but he was only charged with battery of a police officer. Indeed, the heading of the petition includes the citation to the second degree battery statute, La. R.S. 14:34.1 for count one. However the actual wording of the allegation, “ * * * committed a battery without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of the duty,” leaves no doubt the charge is battery of a police officer, a violation of La. R.S. 14:34.2.
Ch.C.Art. 845(3) provides that the petition for delinquency shall set forth with specificity facts which show the child is a delinquent child. See also C.Cr.P. art. 464, which requires that an indictment or bill of information be a plain, concise and definite written statement of the facts constituting the offense, charged. Ch.C.art. 845(4) requires the petition to specify the statute the child is accused of | (¡violating. We have found no rule in the children’s Code to guide us in resolving a conflict between cited statute and the actual language used to show the child is delinquent. On authority of Ch.C.art. 803 we look to the La.Code of Criminal Procedure for assistance in resolving the conflict. C.Cr.P. art. 464 provides that an error in the citation, or its omission, shall not be grounds to reverse a conviction if the error or omission did not mislead the defendant or his prejudice.
In State v. Boswell, 96-801 (La.App. 3 Cir. 2/12/97) 689 So.2d 627 the Court found a similar problem. There, the wording of the bill of information charged two counts of distribution of cocaine, but the citation reference was to La. R.S. 40:967(A)(1)(C). Distribution of cocaine is prohibited by La. R.S. 40:967(A)(1) but subsection (C) punishes possession of the substance. The Third Circuit held:
Since the bill of information in the present case states the essential facts of the offense charged and the [defendant has not objected to this error, nor claimed surprise or prejudice, this error is harmless.
96-801 at 9, 689 So.2d 632
Implicit in the Third Circuit’s reasoning in Boswell is its conclusion that it is the recitation of facts in the bill of information (or petition) showing criminal conduct which determines the offense being prosecuted, not the statutory citation. We agree with that conclusion, especially in light of an accused’s constitutional right to be informed of the nature and cause of the accusation against him. See U.S. Constitution, Amendment VI; Louisiana Const. Art. I § 13.
|7In the case sub judice the words of the petition unmistakably allege a battery of a police officer. As noted by the La. Supreme Court in State v. Johnson, 2001-0006 (La.5/31/02), 823 So.2d 917 (La.2002):
The crime of battery of a police officer is generally a six month misdemeanor offense. La. R.S. 14:34.2(B)(1). However, the crime becomes a felony, and thereby entitles a defendant to a jury trial if it is committed within a correctional facility, La. R.S. 14:34.2(B)(2), or if it produces injury that requires medical attention. La. R.S. 14:34.2(B)(3).
2001-0006 at 2, 823 So.2d at 919.
Since the petition, quoted supra, did not include any allegation that the offense occurred within a correctional facility or that the victim required medical attention, at most, D.M. was only charged with the misdemeanor grade of the offense. Even if we assume arguendo that the petition *1221 alleges a battery of a police officer committed within a correctional facility, second degree battery is not a lesser included responsive verdict. See State v. Johnson, supra 2001-0006 at 5, 823 So.2d at 921:
The correct responsive verdicts in [a case where the defendant is charged with battery of a police officer when the offender is in the custody of a correctional facility are]:
1) Guilty as charged ... (felony grade);
2) Guilty of battery of a police officer (misdemeanor grade);
3) Guilty of simple battery (misdemean- or)
4) Not guilty.
We have scoured the record and have not found an amended petition nor a minute entry reflecting an oral amendment in open court. We conclude, therefore, that since the juvenile was adjudicated delinquent for an offense with which he was not charged (second degree battery), and which is not responsive to the offense |swith which he was charged (battery of a police officer, misdemeanor grade), his adjudication of delinquency on count one must be reversed and the matter remanded for further proceedings consistent with the views expressed herein.

ASSIGNMENT OF ERROR NO. 1:

Our discussion above regarding the error patent moots D.M.’s first assignment of error as to count one. On the Aggravated Escape adjudication he asserts a lack of evidence to show his departure was “under circumstances wherein human life is endangered.”
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991); State v. Juarbe, 2001-2250 (La.App. 4 Cir. 7/31/2002), 824 So.2d 1240. When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982).
Insofar as it pertains to the facts of this case, “aggravated escape is the intentional departure of a person ... from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.” La. R.S. 14:110(C). It was stipulated at the adjudication hearing that D.M. was legally confined. The state proved the element of departure through |flthe testimony of Deputy Shackelford to the effect that D.M. took the master keys from his pocket and that D.M. was gone when he regained consciousness. Corroborative of the fact that he departed the detention center was the testimony of the worker on the oil rig in Lake Washington that D.M. appeared at the rig seeking assistance at a time when he should have been confined in the detention facility. Most compelling, though, is the fact that he subsequently turned himself in to Grand Isle Police, quite a distance away from the place of his confinement.
The final element the state had to prove was whether, under the circumstances, human life was endangered. Here, given the advanced age of the deputy and the fact that his head was slammed against a table such that he was rendered unconscious, viewing the evidence in the light most favorable to the prosecution, we find the conclusions of the trial court that D. M.’s departure was under circumstances where *1222 in human life was endangered is a permissible view of the evidence.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2:

Again, we note for completeness that óur disposition on the error patent moots this assignment as to count one of the petition.
When an excessive disposition is complained of in a juvenile proceeding, the record must be reviewed to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child’s | inneeds, and the best interest of society, State ex. Rel. M.N.H., 2001-1218 (La.App. 3 Cir. 2/6/02), 807 So.2d 1149; State ex. rel. K.H., 98-632 (La.App. 5 Cir. 12/16/98), 725 So.2d 583; State in Interest of T.L., 28,564 (La.App. 2 Cir. 5/8/96), 674 So.2d 1122. In any review for excessiveness, the appellate court must first ascertain whether the lower tribunal took cognizance of the general guidelines provided for juvenile cases in Louisiana Children’s Code Article 901, and whether the record reflects an adequate factual basis for the commitment imposed. State in Interest of T.L., 674 So.2d 1122. “Following that determination, the reviewing court need only explore for constitutional exeessiveness in light of the circumstances of the case and the background of the juvenile.” Id. at 1124. “[Ajbsent a showing of manifest abuse of the wide discretion afforded in such cases, a disposition will not be set aside as constitutionally excessive.” Id.
D.M. argues that because he had no previous record of violent tendencies and because the deputy could not see if both L.B. and D.M. attacked him or if it was just L.B., that the sentence was excessive.
The trial judge noted, and the evidence supports, that both juveniles were principals acting in unison in the commission of the crime. He articulated the fact that the deputy was elderly; that D.M. and L.B. “savagely beat” him; and, that this fact shocked the conscience and predominated against probationary treatment. The judge referred to the fact that L.B. died during the course of this event. The record reflects that the judge specifically found that D.M. was a threat to society. He stated that D.M. had already proven himself to be a “callous, heinous, 11 bloodthirsty, violent individual without remorse.” The court noted that there was an undue risk that during the period of a suspended sentence or probation that D.M. would commit other crimes. He noted that D.M. had repeatedly committed criminal offenses and that he had done so violently and viciously. There was no reason to believe, the judge found, that D.M. would not do the same thing again. He concluded that D.M. needed correctional treatment in a custodial environment and that a lesser sentence would deprecate the seriousness of the delinquent act.
The record further reflects that the trial judge adequately considered the mitigating circumstances of Ch.C. art 901(D). He found D. M.’s conduct in fact caused serious harm to the deputy and to L.B. He found the beating of the deputy to be intentional thereby negating the factor pertaining to whether D.M. contemplated that his conduct would cause serious harm. The judge found no provocation; no substantial grounds tending to excuse or justify the conduct; that D.M.’s prior history did not indicate he would lead a law abiding life for a substantial period of time; that his character and attitude indicated he was likely to commit another delinquent act or crime; and, that there was not even a remote possibility that D.M. would respond affirmatively to probationary treatment. The court concluded by saying that it was- not concerned whether commitment would entail hardship to the juvenile or his family. In the context of the remark, *1223 though, it is apparent the court found the other factors in favor of commitment to outweigh this factor.
|12After a thorough review of the record, we find the court below considered the guidelines set forth in Ch.C. art. 901 and that there is an adequate factual basis in the record for the commitment imposed. We do not find the disposition to be excessive in light of the facts of this case.
This assignment of error is without merit.

CONCLUSION

For the reasons expressed above, we reverse the adjudication of delinquency on count one and remand this matter to the juvenile court for further proceedings consistent with the views expressed herein. The adjudication and disposition on count three are affirmed.
ADJUDICATION OF DELINQUENCY ON COUNT ONE REVERSED AND REMANDED; ADJUDICATION AND DISPOSITION OF COUNT THREE AFFIRMED.

. Pursuant to Uniform Rules of the Courts of Appeal 5-1 and 5-2 the initials of all juveniles are used in this opinion in lieu of their names.