STATE OF LOUISIANA IN         *        NO. 2020-CA-0347
THE INTEREST OF M.R.
                                  *

                                  *        COURT OF APPEAL

                                  *        FOURTH CIRCUIT

                                  *        STATE OF LOUISIANA

                         * * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2019-339-02-DQ-F, SECTION "F"
Honorable Mark Doherty, Judge
* * * * * *
**Judge Tiffany G. Chase**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Tiffany G. Chase)

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

       COUNSEL FOR APPELLANT/M.R.

Leon A. Cannizzaro, Jr., District Attorney
Donna R. Andrieu, Chief of Appeals
Adele Krieger, Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

       COUNSEL FOR APPELLEE/STATE OF LOUISIANA

                                         **AFFIRMED AS AMENDED**
                                         **OCTOBER 5, 2020**

*TGC*
*RLB*
*PAB*

This is a juvenile delinquency case. The juvenile, M.R.,[1] appeals her judgment of disposition for her adjudication of carjacking. After consideration of the record before this Court and the applicable law, we amend the judgment of disposition and affirm as amended.

## FACTUAL AND PROCEDURAL BACKGROUND

The pivotal issue in this appeal concerns the trial court's imposition of a sentence of juvenile life without allowing for modification for four years. Thus, a detailed recitation of the underlying facts are necessary for our analysis.

On December 3, 2019, M.R., sixteen at the time, and her co-defendants (collectively "the juveniles") approached the victim in a French Quarter parking lot. The juveniles claimed to be sisters, that their grandmother had just died, and they needed a ride home. One of the juveniles, who was crying and limping, claimed her leg was broken. The victim agreed to give the juveniles a ride and they provided her with an address in the Seventh Ward.

Upon arrival at the address, the juvenile claiming to have a broken leg requested assistance exiting the vehicle. As the victim went to assist, she saw one

---

[1] Pursuant to Uniform Rules of Louisiana Courts of Appeal, Rules 5-1 and 5-2, the initials of the juveniles involved in this matter will be used instead of their names.

of the juveniles run away. The victim quickly got back into her vehicle. The other juveniles had also fled. Locking the doors, the victim noticed the juveniles had taken the keys but left a cell phone inside the vehicle.

The juveniles returned to the vehicle and demanded the cell phone. The victim said she would return the phone if the juveniles returned her keys. Ignoring this request, the juveniles repeatedly unlocked the vehicle with the key fob while the victim relocked the doors from inside. The juveniles eventually gained entry to the vehicle and forcibly removed the victim by pushing her, punching her, pulling out clumps of her hair, and dragging her to the ground. They entered the vehicle and attempted to drive away. In an effort to stop the juveniles from leaving, the victim climbed onto the hood of the vehicle. One of M.R.'s co-defendants started the vehicle and drove for approximately ten blocks with the victim still on the hood. During this time, one of the juveniles grabbed a metal water bottle in the vehicle, threw it at the victim, and struck her in the head, injuring her. Eventually the vehicle slowed down and the victim rolled off the hood.

The juveniles continued driving before ultimately crashing the vehicle, and fled the scene. A witness to the incident called the police. The juveniles were apprehended when found hiding under a nearby house. The victim positively identified M.R. and her co-defendants as the perpetrators.

On December 5, 2019, the State filed a delinquency petition accusing the juveniles of carjacking, a violation of La. R.S. 14:64.2. On January 16, 2020, the case proceeded to an adjudication hearing. At the conclusion of the two-day hearing, the juvenile court adjudicated M.R. and her co-defendants delinquent.

On January 31, 2020, the juvenile court held the first part of a disposition hearing.[2] The victim testified that she sustained both physical injury and anxiety resulting from the carjacking. She further testified she had difficulty going about her daily life and would suffer panic attacks while driving. She explained she was having difficulty putting the incident past her given its shocking circumstances that made it the topic of news coverage.

On February 13, 2020, the juvenile court held the second part of the disposition hearing allowing M.R. and her co-defendants to present their evidence. Counsel for M.R. called Dr. Sarah Deland (hereinafter "Dr. Deland"), a forensic psychologist, as a witness. Dr. Deland testified that M.R. had no significant trouble until approximately a year ago when her father stopped visiting from out of state. Dr. Deland noted one incident in March 2019 where M.R. was screaming and pounding on the walls and another where she attempted self-harm. Dr. Deland discussed two further incidents, one where M.R. was in an automobile accident and lost consciousness, and another where M.R. was kidnapped at gunpoint in an attempted sexual assault. Dr. Deland's preliminary diagnosis was that M.R. had depressive disorder and stressor/trauma related disorder. This, Dr. Deland opined, leads to mood instability, impulsivity, and a lack of planning or foresight. Also testifying was Daynia Dupass (hereinafter "Ms. Dupass"), a juvenile detention counselor at the Juvenile Justice Intervention Center, who gave insight into the juveniles behavior while in custodial care. As to M.R. specifically, Ms. Dupass

---

[2] The juvenile court declined to order a pre-disposition investigation opining it did not find the resulting reports helpful. Instead, the juvenile court bifurcated the disposition hearing allowing the juveniles two weeks for their counsel to secure independent evaluations and prepare.

testified she was quiet and reserved, sticking to her schoolwork, and that "everything is good."

On February 19, 2020, the juvenile court entered a judgment of disposition committing M.R. to the custody of the Office of Juvenile Justice (hereinafter "the OJJ") for juvenile life.[3] Additionally, all three juveniles received a particularized modification of their dispositions that stated, "[a]fter four years in the custody of the [OJJ], the youth's attorney may file a motion to modify the disposition and request a hearing to determine if the youth is eligible for a step-down to non-secure care" provided the fulfillment of various conditions.[4] This appeal followed.

## ERROR PATENT REVIEW

We have reviewed the record for errors patent, and find one. Raised as part of the assignment of error, we shall discuss it therein.[5] *See State in the Interest of J.T.*, 2011-1646, p. 24 (La.App. 4 Cir. 5/6/12), 94 So.3d 847, 862 (an illegal disposition is an error patent in juvenile delinquency cases).

---

[3] Juvenile life is the maximum sentence that can be imposed on a juvenile delinquent. If the juvenile is under thirteen at the time of commitment to custody, the disposition terminates when the juvenile reaches age eighteen. Otherwise, the disposition terminates when the juvenile reaches the age of twenty-one. *See* La. Ch.C. art. 898.

[4] The conditions are:

> (1) The youth has been on good behavior while in the Department's custody;
> (2) The youth has earned a high school diploma or general equivalency degree;
> (3) The youth has submitted to a psychological evaluation and the evaluation report recommends that the youth should be stepped down to non-secure care; and
> (4) The Department recommends that the youth should be stepped down to non-secure care.

[5] The record does not reflect that the juvenile court advised M.R. of the time period to file post-conviction relief under La. C.Cr.P. art. 930.8, which requires the trial court to inform a defendant of the delays for filing post-conviction relief; however, this language is merely precatory and does not bestow an enforceable right upon an individual defendant. *State v. Handy*, 2001-0005, p. 5 (La. App. 4 Cir. 1/24/01), 779 So.2d 103, 105. Nevertheless, in the interest of judicial economy, this Court hereby notifies M.R. that La. C.Cr.P. art. 930.8 generally requires that an application for post-conviction relief be filed within two years of the finality of the adjudication and disposition. *See* La. C.Cr.P. art. 930.8.

4

In her sole assignment of error, M.R. argues the "maximum disposition of 'juvenile life' without the possibility of modification or early release is excessive and constitutes cruel and unusual punishment." We first address the four-year prohibition on modification of the disposition before turning to the broader excessiveness challenge.

**ILLEGAL DISPOSITION**

M.R. argues the juvenile court's four-year prohibition on modification is an illegal disposition. The Louisiana Children's Code enumerates specific felony-grade delinquent acts whose associated dispositions prohibit modification for a fixed period. *See* La. Ch.C. art. 897.1. The settled doctrine of *Expressio Unius est Exclusio Alterius* dictates that when the legislature specifically enumerates a series of items, the omission of other items is deemed intentional. *See International Paper Co., Inc. v. Hilton*, 2007-0290, pp. 19-20 (La. 10/16/07), 966 So.2d 545, 558-59 (citations omitted); *State in Interest of J.D.*, 2013-0964, pp. 8-9 (La.App. 4 Cir. 11/27/13), 129 So.3d 831, 836. Implicitly applying this interpretive maxim to a juvenile proceeding, the Third Circuit observed that, outside of La. Ch.C. art. 897.1, no other limitations on modification exist within the Children's Code. *See State in the Interest of D.B.*, 2014-0085, pp. 12-13 (La.App. 3 Cir. 5/17/14), 141 So.3d 296, 304 (citing *State in the Interest of J.C.*, 2009-2000, p. 3 (La.App. 1 Cir. 7/15/10), 2010 WL 2802104 (unpub.) (finding juvenile court erred in ordering first three years of custody to be served without benefit of parole based on interpretation of La. Ch.C. art. 898 *in pari materia* with La. Ch.C. art. 897.1)). After examining other relevant provisions of the Children's Code and the Revised Statutes, the Third Circuit concluded that it was error for a juvenile court to impose

a disposition without benefit of modification for a circumstance not within the scope of La. Ch.C. art. 897.1.[6] *In re D.B.*, 2014-0085, pp. 13-15, 141 So.3d at 305-06. We agree.

A proscriptive bar on the modification of a juvenile disposition is impermissible in the absence of a specific legislative provision enabling such. *See also State v. Small*, 2011-2796, p. 19 (La. 10/16/12), 100 So.3d 797, 811 (the rule of lenity requires any doubt as to the interpretation of a criminal statute must be resolved in favor of the defendant); La. Ch.C. art. 102 (provisions of the Louisiana Children's Code shall be liberally construed such that each child shall be accorded due process and receive care conducive to their welfare). The offense for which M.R. was adjudicated delinquent, carjacking, is not one of the offenses enumerated in La. Ch.C. art. 897.1. When an error in the disposition involves the imposition of restrictions beyond what is authorized in the statutes, appellate courts are instructed to correct the disposition. In addition, "[w]here the defect in [disposition] does not involve the exercise of discretion, the [disposition] may be corrected on appeal by amendment rather than remand." *State in Interest of H.L.F.*, 1997-2651, p. 6 (La. App. 4 Cir. 5/20/98), 713 So.2d 810, 813 (citation omitted). We therefore amend the judgment of disposition to remove the four-year prohibition on modification.

---

[6] Specifically, La. Ch.C. arts. 897, 898, 901, and 909 contain language emphasizing the dispositions for offenses enumerated in La. Ch.C. art. 897.1 are unique in their prohibition on modification for a fixed period. The legislature makes this expressly clear in La. R.S. 15:906(C):

> In cases governed by Children's Code Article 897.1, it is hereby declared to be the public policy of this state that commitment to the custody of the Department of Public Safety and Corrections for confinement in secure placement without benefit of parole, probation, suspension of imposition or execution of sentence, or modification of sentence, is necessary and proper because for these very serious offenses the protection of society is the primary objective. The goal of such confinement is rehabilitative, as rehabilitation furthers public safety.

M.R. further argues her disposition of juvenile life is excessive. This Court has applied the following analytical framework for a juvenile's claim that her disposition is excessive:

> In any review for excessiveness, the appellate court must first ascertain whether the lower tribunal took cognizance of the general guidelines provided for juvenile cases in Louisiana Children's Code Article 901, and whether the record reflects an adequate factual basis for the commitment imposed. *State in Interest of T.L.*, 674 So.2d 1122. "Following that determination, the reviewing court need only explore for constitutional excessiveness in light of the circumstances of the case and the background of the juvenile." *Id.* at 1124. "[A]bsent a showing of manifest abuse of the wide discretion afforded in such cases, a disposition will not be set aside as constitutionally excessive." *Id.*

*State in the Interest of D.M.*, 2002-2528, p. 10 (La.App. 4 Cir. 7/2/03), 851 So.2d 1216, 1222. Thus, our appellate review of M.R.'s claim requires examining both statutory excessiveness and constitutional excessiveness.

### *Statutory Excessiveness*

M.R. contends that her commitment to OJJ custody – rather than placement in a residential facility – renders her disposition excessive. When, as here, a juvenile has been adjudicated delinquent for a felony-grade act, a juvenile court "may commit the child to the custody of the Department of Public Safety and Corrections, with or without a recommendation that the child be placed in alternative care facilities." La. Ch.C. art. 897(D). However, a juvenile court shall not remove a child from the custody of her parents "unless [her] welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal." La. Ch.C. art. 901(A). In making this determination, a juvenile court must impose "the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is

7

consistent with the circumstances of the case, the needs of the child, and the best interest of society." La. Ch.C. art. 901(B). In extensive written reasons, the juvenile court applied the proper statutory law and examined the relevant circumstances of the case in reaching its decision.

Turning first to La. Ch.C. art. 901(D), the juvenile court weighed each consideration and determined it should not suspend M.R.'s disposition or allow for probation. Specifically, the juvenile court cited M.R.'s five prior delinquencies in 2019, the fact that the carjacking was pre-planned, the unforeseeability of whether M.R. would commit a future delinquent act, and that nothing in the record indicated M.R. would respond affirmatively to probationary treatment. To the latter point, the juvenile court observed the opposite to be true as "each girl has begun to do much better in the controlled, structured environment of a detention facility which meets their individual daily need for safety, stability, medical and mental health care, and education."

A juvenile's commitment to the Department of Public Safety and Corrections may be appropriate if any of the following circumstances exist:[7]

(1) There is an undue risk that during the period of a suspended commitment or probation the child will commit another crime.

(2) The child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment.

(3) A lesser disposition will deprecate the seriousness of the child's delinquent act.

La. Ch.C. art. 901(C). As to the first circumstance, the juvenile court noted the actions of M.R. and her co-defendants demonstrated they are capable of engaging

---

[7] Consideration of La. Ch.C. art. 901(C)(4) is not relevant as a firearm was not involved.

in behavior that ignores the threat it poses to human life. As to the second circumstance, the juvenile court specifically considered Dr. Deland's opinion that M.R.'s attention deficit and hyperactivity disorders required treatment and medication in the form of wraparound services. However, it determined the evidence reflects the delivery of those services in a controlled and structured environment was crucial in yielding positive results. Finally, as to the third circumstance, the juvenile court determined that a lesser disposition would deprecate the seriousness of M.R.'s delinquent act. The court emphasized that the juveniles' behavior and the egregious circumstances of the carjacking increased the potential for a fatality. The juvenile court concluded "the three youths recklessly endangered the victim's life, their own lives, and the lives of innocent people on the street, and that they each pose an undue risk to the public that each will commit another offense."

M.R. contends that the juvenile court erred in requiring her placement in a secured facility because residential placement would better serve her treatment needs. Dr. Deland's testimony that the wraparound services required for M.R.'s treatment are available at the OJJ undercuts this contention. Further, Dr. Deland acknowledged that there would be no impediment to the OJJ developing a long-term treatment plan in the best interest of M.R. Ms. Dupass testified that, in her present custody with OJJ, M.R. is adapting well, beginning to trust the staff, and keeping to her schoolwork. Thus, we find M.R.'s argument that residential placement would better serve her treatment needs unpersuasive.

9

M.R. also argues her disposition is inconsistent with prior dispositions handed down by the juvenile court. In support of this argument, M.R. relies on *State ex rel. A.M.*, 2007-1228 (La.App. 4 Cir. 4/9/08), 983 So.2d 176, wherein the juvenile received a three-year disposition for a carjacking when he punched the victim, knocking out a tooth. The relative factual similarities to the matter *sub judice* end there. Not only did M.R. and her co-defendants punch the victim, they also evinced an indifference to human life with their continued actions of attempting to shake the victim off the hood of her moving vehicle. The victim testified the carjacking resulted in both physical injury and anxiety effecting the routine activities of her daily life.

M.R. was sixteen years old at the time of her arrest and detention. She will serve less than four and a half years in the custody of the OJJ prior to the expiration of her disposition of juvenile life. *See* La. Ch.C. art. 898. Thus, relative to the disposition in *In re A.M.*, M.R. will only serve a potential maximum of an additional one and a half years in custody. We further note the maximum sentence permissible for an adult found in violation of the underlying crime of carjacking is twenty years at hard labor without the benefit of parole. La. R.S. 14:64.2(B). Given M.R.'s multiple 2019 delinquencies, the aforementioned egregious circumstances involved in the carjacking, and the positive response M.R. has shown to a secure and structured environment, we find the juvenile court's decision to commit M.R. to the custody of OJJ for juvenile life is not statutorily excessive.

*Constitutional Excessiveness*

"A juvenile has the same constitutional rights against excessive punishment as an adult." *State in the Interest of R.C.*, 2016-0966, p. 2 (La.App. 4 Cir. 12/28/16), 208 So.3d 962, 964. A sentencing court has "wide discretion in the imposition of [a] sentence within statutory limits" and a sentence imposed "should not be set aside as excessive in the absence of a manifest abuse of [its] discretion." *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979). M.R.'s disposition of juvenile life is within the statutory limit for carjacking. *See* La. Ch.C. art. 898; La. R.S. 14:64.2(B)(2). However, "the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment." *Sepulvado*, *supra*. A sentence is excessive and unconstitutional "if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering." *State v. Bonanno*, 384 So.2d 355, 357 (La. 1980).

The disposition imposed in this case is not grossly out of proportion to the egregious nature of M.R.'s delinquent act: a calculated and violent carjacking that injured and terrorized the victim, the reckless nature of which could have led to further, and direr, consequences. Nor do we find the disposition is a purposeless and needless imposition of pain and suffering. As discussed earlier in this opinion, the trial court properly weighed the statutory considerations and we find no error in the numerous factors it articulated militating in favor of a custodial sentence. Having removed the four-year prohibition on modification, the remaining goals

11

enumerated by the juvenile court – good behavior, high school diploma/G.E.D., and a psychological evaluation with accompanying recommendation that M.R. be stepped down to non-secure care – reflect a disposition focused on rehabilitation rather than punishment, with appropriate considerations for the welfare of society. Thus, we find the disposition, as amended, is not constitutionally excessive.

## DECREE

For the foregoing reasons, we amend the judgment of disposition to remove the four-year prohibition on modification, and affirm as amended.

**AFFIRMED AS AMENDED**